UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

WATTUM MANAGEMENT, INC.,

    Plaintiff,

v.

CHENGDU CHENXIYU TECHNOLOGY
CO., LTD. a/k/a CHENGDUCHENXIYU
TECHNOLOGY CO., LTD, DENG JIE,
BAO CARL SHICUN and John Does 1-10

    Defendants,

and

OKX a/k/a OKEx; and
Binance Holdings Ltd. a/k/a
Binance

    Nominal Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiff, Wattum Management, Inc. ("Wattum"), files this Verified Complaint against Defendants, Chengdu Chenxiyu Technology Co., Ltd. a/k/a Chengduchenxiyu Technology Co., Ltd. ("Chengdu"), Deng Jie ("Jay"), and Bao Carl Shicun ("Carl") (Chengdu, Jay and Carl collectively referred to as "Defendants"), and Nominal Defendants OKX and Binance Holdings Ltd. a/k/a Binance ("Binance"). In support hereof, Wattum alleges as follows:

### PARTIES

1. Wattum is a Wyoming Corporation with a principal place of business located at 2980 NE 207th St., Suite 705 Aventura, FL 33180.

2. Chengdu is a Chinese Corporation with a principal place of business located at Wanda B1 Office Building, Honggutan District, Nanchang City, Jiangxi Province, China.

3. Jay is an individual who, upon information and belief, owns Chengdu and has a residential address of 525, Guangzhou Road, Qingyunpu District, Nanchang City, Jiangxi Province, China.

4. Carl is an individual with a residential address of Hang Yin Road Street, Apt. 5-1-1302 Hangzhou, Zhejiang Province, Yunhe Chenyuan community 31000, China.

5. OKX, also known as, or formerly known as, OKEx is a nominal defendant and a global cryptocurrency exchange with a headquarters located at Victoria, Suite 202, 2nd Floor, Eden Plaza, Seychelles.

6. Binance is a nominal defendant and a global cryptocurrency exchange with a headquarters located at George Town, 23 Lime Tree Bay Ave, Cayman Islands.

7. OKX and Binance ("Nominal Defendants") have been named as nominal defendants in this action because they maintain possession, custody and control over the virtual wallets in which the funds that Defendants converted are located.

8. Wattum seeks an Order authorizing and directing Nominal Defendants to release the funds misappropriated by Defendants from Wattum which Nominal Defendants currently holding pending receipt of a Court Order.

9. The John Doe Defendants are persons or entities that materially aided and abetted in the unlawful conduct complained of herein and whose names and identities are currently unknown to Wattum.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this matter because it is between citizens of Florida and citizens or subjects of a foreign state and the amount in controversy exceeds the sum or value of $75,000 exclusive of interests or costs. *See* 28 U.S.C. § 1332.

11. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Southern District of Florida, Miami Division, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial division.

## FACTUAL BACKGROUND

### A. BACKGROUND

12. Wattum is a distributor of cryptocurrency mining equipment or "miners".

13. Miners are Application Specific Integrated Circuit ("ASIC") computers whose computing power solves or validates blocks on the blockchain.

14. When miners successfully complete a task, they earn "rewards", expressed in fractional interests in Bitcoin, a cryptocurrency.

15. It is widely known that there is a limited supply of Bitcoin that can ever exist.

16. Currently, approximately 19 million Bitcoins have been mined and are in circulation leaving approximately 2 million left to be mined.

17. There are several leading manufacturers of ASICs.

18. This action pertains to ASICs manufactured by Bitmain Technologies, Ltd., ("Bitmain"), a leading cryptocurrency miner manufacturer headquartered in China with offices and repair facilities throughout the world including the United States.

19. Bitmain cryptocurrency miners come in different models and the speed and efficiency of said miners is measured in hashrate.

20. Increased hashrate (computing speed) and efficiency (power consumption) are key economic considerations in the crypto-mining industry.

21. Bitmain cryptocurrency miners are highly regarded in the industry for their capabilities and there is a high demand for the latest and best Bitmain miners resulting in significant lead times.

**B.   FAMCO ORDER AND PURCHASE**

22. On or about May 8, 2023, First Argentine Mining Company ("FAMCO") ordered 635 Bitmain Antiminer S19J Pro+ 122 TH miners from Wattum (the "FAMCO Order"). *See,* **Exhibit "A".**

23. In connection with the FAMCO Order, FAMCO advanced approximately $949,963.00 to Wattum.

24. Between May 8, 2023 and May 15, 2023, Wattum received quotes, proposals and assurances from Chengdu and its representative, Jay.

25. At all times relevant hereto, Carl was a broker and/or agent who was involved in the interactions between Chengdu and Wattum.

26. At all times relevant hereto, Jay was an employee, representative and/or agent (actual and/or ostensible) of Chengdu with requisite authority to act.

27. By invoice dated May 15, 2023 (the "Purchase Agreement"), Chengdu agreed to sell and deliver 650 BITMAIN Antminer s19pro+ 120TH ASIC miners (the "Units") to Wattum for a purchase price of $904,800.00. A true and correct copy of the Purchase Agreement is attached as **Exhibit "B"**.

28. Pursuant to the Purchase Agreement, the Units had an Estimated Time of Arrival of June 2023 "subject to Antiminer manufacturer's delivery time." *Id.*

156484661.1

29. Pursuant to the Purchase Agreement, Wattum paid Chengdu $904.800.00 in four (4) installments:

   a. Wattum paid a 35% down payment in the amount of $316,680 divided into two separate payments: one test payment of $100 on May 12, 2023 and the second payment of $316,580 on May 13, 2023 (the "First Tranche").

   b. On June 16, 2023, Wattum paid Chengdu an additional $266,000 in three separate payments in the amounts of $1,000, $82,000, and $183,000 (the "Second Tranche").

   c. On June 21, 2023, Wattum paid Chengdu another $110,000 (the "Third Tranche").

   d. Lastly, on June 22, 2023, Wattum paid Chengdu $212,120 (the "Fourth Tranche").

30. Wattum's payments were made using the digital currencies Tether USD and USD Coin.

31. Pursuant to Chengdu's instructions, Wattum paid the First Tranche to digital wallet ID: 0xa087633d71631b77c1c81a64d9f47a22f4999959 (the "9959 Wallet").

32. The 9959 Wallet was housed on Binance, a prominent cryptocurrency exchange.

33. Chengdu received the First Tranche.

34. Pursuant to Chengdu's instructions, Wattum paid the Second Tranche, Third Tranche and Fourth Tranche to digital wallet ID: 0x0a7f2fe49b2f71c740f424ef510aa27a1c03c7dd (the "C7DD Wallet"). The C7DD Wallet is housed on OKX, another prominent cryptocurrency exchange.

35. Chengdu received the Second, Third and Fourth Tranches.

36. Despite Wattum's payment of the purchase price, the Units were never made available for Wattum to pick up.

37. Immediately after June 22, 2023, Chengdu and Jay (and except as set forth herein) terminated all communications with Wattum.

38. On June 28, 2023, Carl informed Wattum that the Units were never made available for pickup and that Jay ceased communicating with him after receiving the final payment.

39. Defendants delivered no Units to Wattum in June 2023 or anytime thereafter.

C. **WATTUM LAUNCHES FRAUD INVESTIGATION**

40. Wattum made multiple attempts to contact Chengdu and obtain the Units or a full refund of the purchase price, without success.

41. After not receiving a satisfactory response and having been informed by Carl that Jay had ceased all communications with him after receiving the final payment, Wattum promptly launched a fraud investigation.

42. On June 29, 2023, Wattum filed a Police Report with the Aventura Police Department. *See,* **Exhibit "C".**

43. On July 3, 2023, Wattum reported the events in question to the Internet Crime Complaint Center ("IC3").

44. IC3 is an Internet and cybercrime reporting mechanism established by the Department of Homeland Security ("DHS") and run by the Federal Bureau of Investigation ("FBI"). *See,* www.ic3.gov (last accessed March 14, 2024).

45. Furthermore, Wattum engaged private forensic cybersecurity professionals with expertise in tracing the movement of cryptocurrency across the blockchain.

D. **TRACING SECOND, THIRD AND FOURTH TRANCHES**

46. As noted, pursuant to Defendants' instructions, Wattum paid the Second, Third and Fourth Tranche into the C7DD Wallet controlled by Defendants.

47. Through investigative sources and methods, including collaboration with law enforcement, Wattum determined that almost immediately upon receipt, Defendants (i) converted

Wattum's funds from USDC stablecoin to Etherium; (ii) withdrew Wattum's funds in the form of Etherium from the C7DD Wallet; and (iii) transferred and dispersed said funds to the following cryptocurrency wallet, hereinafter referred as the ("1EF2 Wallet").

"0x7eb6c83ab7d8d9b8618c0ed973cbef71d1921ef2"

48. Defendants transfer of Wattum's funds from the C7DD Wallet to the 1EF2 Wallet was accomplished through the following four (4) transactions undertaken between June 16, 2023 and June 22, 2023:

Tx hash : 0xc2b47285d86b42dd3fa5f28f2b0e64366a574622c2e945fa6218a5086490a766
Date : Jun 22, 2023
Time : 01:25 PM (UTC)
Amount : 212,120 USDC

Tx hash : 0x7bf08987d6228aa6b3f57a863dd68a8492988c2a60b845ab5c404505c5000111
Date : Jun 21, 2023
Time : 07:59 PM (UTC)
Amount : 110,000 USDC

Tx hash : 0xe421b6b84a24e274bb3302cabeeb83119e1b28b8df8b948f43bba3d9bf342d5b
Date : Jun 16, 2023
Time : 04:20 PM (UTC)
Amount : 184,000 USDC

Tx hash : 0x0025944ff656c647ab82fd3ff2a32fac26f123752970c559ea4c1ac10439c3bc
Date : Jun 16, 2023
Time : 04:36 PM (UTC)
Amount : 82,000 USDT

49. The amount transferred by Wattum to Defendants into the C7DD Wallet was $588,120.00.

50. The amount transferred by Defendants from the C7DD Wallet and into the 1EF2 Wallet was $588,120.00.

51. Through investigative sources and methods, including collaboration with law enforcement, Wattum determined that the C7DD Wallet was housed and/or hosted by Nominal Defendant OKX on the OKX exchange.

52. Nominal Defendant OKX is a global cryptocurrency spot and derivatives exchange and is the second biggest crypto exchange by trading volume, serving over 50 million people.

53. The OKX exchange or platform permits cryptocurrency investors to buy and sell Bitcoin, Ethereum and other forms of cryptocurrency.

54. Upon information and belief, OKX has over 2,000 employees worldwide.

55. The OKX exchange is the cryptocurrency equivalent of a bank.

56. A wallet is the cryptocurrency equivalent of a bank account.

57. In connection with its investigation and through collaboration with law enforcement, Wattum reported the suspected fraud to OKX.

58. On or about July 7, 2023, OKX took action to freeze the C7DD Wallet and confirmed further efforts to convert, disguise and dissipate funds to at least three (3) other wallets as follows:



59. In response to action by Wattum and upon its internal investigation, OKX elected to freeze the C7DD Wallet, the wallets referenced in the aforementioned email of July 7, 2023 and

156484661.1

Defendants' other wallets on the OKX exchange including, without limitation, the following wallet (hereinafter referred to as the "2482 Wallet").

9544363901b16d3e39ccef57d40e2f1a456d496035e786b6fccaa807bf0a2482

60. Furthermore, OKX took action to consolidate funds frozen in the C7DD Wallet, the wallets referenced in the aforementioned email of July 7, 2023 and Defendants' other wallets including the 2482 Wallet into the following custodial account/wallet (the "OKX Custodial Wallet") safeguarded by OKX:

*TDVPfoVusba9wqJ8zKya2aXCneJmzcD62S.*

61. The OKX Custodial Wallet contains funds that belong to Wattum.

62. OKX is prepared to release Wattum's funds in the OKX Wallet but requires a valid order of court.

### E. TRACING THE FIRST TRANCHE

63. As noted, pursuant to Defendants' instructions, Wattum paid the First Tranche into the 9959 Wallet controlled by Defendants.

64. The amount of the First Tranche was $316,680.00.

65. The 9959 Wallet was housed on the Binance Exchange.

66. The Binance Exchange is operated by Binance Holdings, Ltd. and is reportedly the largest cryptocurrency exchange in the world with estimated annual revenue of $12 billion dollars and over 7,000 employees.

67. Through investigative sources and methods, including collaboration with law enforcement, Wattum determined that almost immediately upon receipt of the First Tranche,

Defendants transferred funds from the 9959 Wallet to at least the following two additional wallets hosted and/or housed at Binance:

0x19ff65b9e9cb59f6ddf098771395c38870599de0

and

0xdfd5293d8e347dfe59e90efd55b2956a1343963d

68. The aforesaid wallets are hereinafter referred to as the "9DE0 Wallet" and "963D Wallet", respectively.

69. On or about July 7, 2023 (and after OKX took action against Defendants' other wallets on the OKX Exchange), Defendants (i) admitted liability; (ii) agreed to and did return to Wattum $260,000.00. in cryptocurrency; and (iii) pledged to promptly return the remaining proceeds.

70. To date the remaining proceeds related to the First Tranche have not been returned.

**F.    DAMAGES**

71. To date, Wattum has not recovered any of the funds transmitted pursuant to the Second, Third and Fourth Tranches and only partially recovered funds transmitted pursuant to the First Tranche.

72. To date, Wattum has been required to expend substantial fees, costs and expenses, including reasonable legal fees and fees paid to vendors to assist in Wattum's investigation into Defendants' fraudulent activities and secure the return of funds, money and property that Defendants' unlawfully misappropriated.

73. To date, Wattum has been required to expend substantial legal fees on the defense of claims asserted by FAMCO arising from the alleged non-fulfilment of the FAMCO Order.

74. To date, Wattum has suffered other losses including, without limitation, a loss to its business reputation and standing.

75. Wattum has also suffered a severe business disruption due to the time and effort it has been forced to expend in attempting to contact Defendants and investigating Defendants' fraud and attempting to secure return of the funds, money and property that Defendants' unlawfully misappropriated.

76. Wattum further has incurred lost profits as a result of Defendants' fraudulent activity.

## COUNT I – BREACH OF CONTRACT

77. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

78. On May 15, 2023, Wattum and Chengdu entered into the Purchase Agreement.

79. The Purchase Agreement is a valid and enforceable contract.

80. Pursuant to the Purchase Agreement, Chengdu agreed to sell the Units to Wattum and make the Units available for pickup.

81. To effectuate its purchase of the Units, Wattum paid Chengdu the purchase price of $904,000.00 in seven separate payments.

82. Chengdu is a merchant who deals in movable goods of the kind involved in this transaction – ASCI miners.

83. Chengdu materially breached the Purchase Agreement because it failed to make the Units available for pickup despite Wattum paying the full purchase price.

84. As a direct and proximate cause of Chengdu's breach of contract, Wattum has been damaged as heretofore alleged.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

## COUNT II – UNJUST ENRICHMENT

85. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

86. Wattum conferred a benefit to Chengdu by, *inter alia*, delivering payments in the total amount of $904,000.00 in order to purchase the Units.

87. Chengdu voluntarily accepted and has retained the benefit conferred – the funds paid by Wattum that Chengdu has failed to return.

88. Chengdu's unjust enrichment was at the expense of Wattum who paid the entire amount of the purchase price.

89. It would be inequitable to allow Chengdu to retain the funds without having to deliver the Units or make the Units available for pickup as outlined in the Purchase Agreement.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

## COUNT III - FRAUD

90. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

91. Defendants made intentionally false statements including, *inter alia*, their ability, intent and or willingness to deliver the Units despite knowing that they had no intent or ability to do so.

92. In fact, upon information and belief, Defendants operated a fraudulent enterprise intended to defraud Wattum of its funds.

93. Defendants knew their representations were false when they made them and lacked any intention of actually making the Units available for Wattum.

94. Defendants made the false statements with the intent to induce Wattum into entering into the Purchase Agreement and accepted Wattum's money or property without any intention to make the Units available for Wattum.

95. As a result, Wattum has been damaged in reliance upon the representations made by Defendants.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

## **COUNT IV - CONVERSION**

96. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

97. Wattum paid Chengdu a total of $904,000.00 for the purchase of the Units based upon Defendants' representations.

98. Wattum has repeatedly demanded that Defendants return the money.

99. However, Defendants have yet to return the money with the exception of the $260,000.00 refund.

100. Further, Defendants have not delivered the Units or made the Units available for Wattum.

101. As a result, Defendants have converted Wattum's funds.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

## COUNT V – CIVIL THEFT

102. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

103. Defendants fraudulently entered into the Purchase Agreement with Wattum with no intent to fulfill their obligations.

104. Defendants engaged in a fraudulent scheme to induce Wattum to enter into the Purchase Agreement.

105. In doing so, Defendants acted with criminal, felonious intent in inducing Wattum to enter into the Purchase Agreement.

106. Pursuant to the Purchase Agreement, Defendants obtained Wattum's property – the $940,000.00.

107. However, Defendants did not make the Units available to Wattum.

108. Defendants have stolen Wattum's funds, which were entrusted to them by Wattum, for their own benefit.

109. Based upon the foregoing, Defendants stole, misappropriated, converted, and/or obtained by false pretenses, fraud, or deception Wattum's funds, constituting a theft under Fla. Stat. § 812.014 because Defendants obtained or endeavored to obtain or use the funds, with the intent to deprive Wattum of a right thereto or benefit therefrom.

110. Wattum has been damaged as a result of Defendants' fraudulent scheme.

111. A letter pursuant to Fla. Stat. § 772.11(a) is being sent to the Defendant concurrently with the Complaint.

112. Pursuant to Fla. Stat. § 772.11, Wattum is entitled to treble damages and an award of its attorney's fees and costs.

**WHEREFORE**, Wattum demands judgment against Defendants for damages, including treble damages and attorneys' fees pursuant to Fla. Stat. § 772.11, and such further relief as the Court deems proper.

### COUNT VI – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

113. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

114. Wattum had an existing business relationship with FAMCO. *See,* **Exhibit "A".**

115. Defendants knew of this relationship and Wattum's relationship with its existing customers and were aware that their conduct would interfere with Wattum's rights under the contract.

116. Nevertheless, Defendants interfered with Wattum's rights under the contract by, *inter alia*, stealing Wattum's funds and not delivering the Units.

117. Defendants' interference is without justification or privilege.

118. As a result of Defendants' interference, Wattum has suffered damages as explained herein.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

### COUNT VII – TORTIOUS INTERFERENCE ADVANTAGEOUS BUSINESS RELATIONSHIPS

119. Wattum reincorporates and realleges paragraphs 1-76 of this Complaint as if fully set forth herein..

120. Wattum had an existing business relationship with FAMCO. *See,* **Exhibit "A".**

121. Defendants knew of this existing relationship between Wattum and FAMCO.

122. Nevertheless, Defendants intentionally and unjustifiably interfered with the relationship by, *inter alia*, stealing Wattum's funds and not delivering the Units.

123. As a result of Defendants' interference, Wattum has suffered damages as explained herein.

**WHEREFORE**, Wattum demands judgment against Defendants for damages and such further relief as the Court deems proper.

## RELIEF REQUESTED

124. By reason of the aforesaid, Wattum seeks the following:

    a. An Order that Defendants are liable to Wattum for actual, compensatory, treble damages, and exemplary damages;

    b. An Order awarding Wattum judgment against Defendants in an amount to be proven at trial;

    c. An Order compelling OKX to release the funds in its possession procured by Defendants' fraud;

    d. An Order awarding attorney's fees, costs, and pre-judgment interest as permitted by law;

    e. Such other provisional remedies including attachment as may be permitted under applicable law and/or under Rule 64 of the Federal Rules of Civil Procedure; and

    f. Such other relief as may be deemed just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Wattum demands a trial by jury of all issues so triable.

**Respectfully submitted,**

FOX ROTHSCHILD LLP

By: */s/ Alex L. Braunstein*
    Alex L. Braunstein, Esq.
    Florida Bar No. 98289
    777 S. Flagler Dr., Suite 1700
    West Palm Beach, Florida 33401
    Telephone: (561) 835-9600
    Facsimile: (561) 835-9602
    Tel: (561) 804-4497
    abraunstein@foxrothschild.com
    *Attorneys for Plaintiff*

## **VERIFICATION**

      IGOR KOVALYSHKIN, of full age, under oath, hereby declares as follows:

1.       I am a Chief Executive Officer of Wattum Management, Inc.

2.       I declare under the penalty of perjury that the facts set forth in this Verified Complaint are true and correct..

*DocuSigned by:*

*Lgal*

—93586F7643D0454...

IGOR KOVALYSHKIN

Executed on March \_\_\_, 2024

03/18/24

156380494.2