UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21052-DPG

WATTUM MANAGEMENT, INC.,

    Plaintiff,

v.

CHENGDU CHENXIYU TECHNOLOGY
CO., LTD. a/k/a CHENGDUCHENXIYU
TECHNOLOGY CO., LTD, DENG JIE,
BAO CARL SHICUN and John Does 1-10

    Defendants.

and

OKX a/k/a OKEx; and
Binance Holdings Ltd. a/k/a
Binance

    Nominal Defendants
_____/

**PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE UPON DEFENDANTS AND
NOMINAL DEFENDANT BINANCE HOLDINGS LTD.
AND ITS MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Wattum Management, Inc. ("Wattum"), by and through its undersigned attorneys and pursuant to Federal Rule of Civil Procedure 4(f)(3), hereby requests that this Court enter an Order allowing alternative service of the Summons and the Complaint on Chengdu Chenxiyu Technology Co., Ltd. a/k/a Chengduchenxiyu Technology Co., Ltd. ("Chengdu"), Deng Jie ("Jay"), and Bao Carl Shicun ("Carl") (Chengdu, Jay and Carl collectively referred to as "Primary Defendants"), and Nominal Defendant Binance Holdings Ltd. a/k/a Binance ("Binance") and states as follows:

**INTRODUCTION**

This is an action to recover approximately $900,000 in cryptocurrency assets ("Crypto Assets") transferred by Wattum to the Primary Defendants, who are based in China and who held themselves out as distributors of powerful cryptocurrency mining computers (rigs) ("Mining Equipment").  As alleged in the Verified Complaint, the Primary Defendants absconded with the Crypto Assets without delivering any Mining Equipment and then broke off communications.  The Primary Defendants subjected the Crypto Assets to multiple transfers designed to conceal tracing and frustrate Wattum's rights.

Wattum reported the theft to state and federal law enforcement authorities.  Wattum also engaged (at considerable expense) a forensic cryptocurrency tracing specialist who painstakingly traced the Crypto Assets to "wallets" housed on two major cryptocurrency exchanges: OKX aka OKEx ("OKX") and Binance – the Nominal Defendants in this action.  Pre-suit, Wattum notified both Nominal Defendants that the traced Crypto Assets were purloined.  Nominal Defendant OKX confirmed that some of the Crypto Assets were located and frozen pending a court order.[1]  No such confirmation was received from Binance, the second Nominal Defendant.

The Primary Defendants (two individuals and one corporation) are based in China.  Nominal Defendant Binance is a large exchange that operates in China and abroad.  Formal Hague Convention service on the Primary Defendants in China through diplomatic channels is expensive, time consuming and not required under applicable law.  Accordingly, pursuant to Federal Rule of

---

1. Nominal Defendant OKX executed a Waiver of Service *See* D.E. 6.  Accordingly, this motion for alternative service pertains solely to the Primary Defendants and Binance, the only un-served Nominal Defendant.

Civil Procedure 4(f)(3), Wattum seeks an Order authorizing service of process on the Primary Defendants, two individual Chinese residents and a Chinese entity via alternative service.

Specifically, Wattum proposes to serve the Primary Defendants through a combination of emails, text messages, Telegram, WhatsApp and WeChat messaging platforms used by the Primary Defendants to conduct business. In combination, these five (5) methods are reasonably calculated to provide Primary Defendants with adequate notice of proceedings sufficient to comport with applicable due process standards.

Furthermore, Wattum proposes to serve Binance, an entity organized in the Cayman Islands, via alternative means. Specifically, and as set forth more fully below, Binance maintains locations and/or affiliates in the United States where service is far more practicable for Wattum to effectuate service than in China or the Cayman Islands. Additionally, Wattum determined that Binance has a director, agent and/or other authorized person in the United States (a White & Case alumnus licensed in California) who is an appropriate recipient for purposes of notice.

Pursuant to Fed. R. Civ. P. 4(f)(3), service of process on a foreign corporation or foreign individual outside the United States may be affected by special order of the court "by other means not prohibited by international agreement as may be directed by the court." As explained more fully below, the methods through which Wattum seeks to serve the Primary Defendants and Binance are best suited to provide them with notice of the claims against them and do not violate any international agreements. Therefore, Wattum respectfully submits that an Order allowing it to serve process as requested herein will benefit all parties and the Court by ensuring Primary Defendants and Binance receive imminent notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve process through the alternative means sought, Wattum will be prejudiced.

**FACTUAL STATEMENT**

Wattum filed its Complaint on March 18, 2024. D.E. 1. This action arises out of Defendants' fraudulent behavior in pilfering the Crypto Assets from Wattum. Wattum and Chengdu entered into a Purchase Agreement on May 15, 2023 pursuant to which Chengdu agreed to sell and deliver 650 BITMAIN Antminer s19pro+ 120TH ASIC miners (the "Units") to Wattum for a $904,800.00. Carl was a broker and/or agent who was involved in the interactions between Chengdu and Wattum. Jay was an employee, representative and/or agent (actual and/or ostensible) of Chengdu involved in the transaction with the requisite authority to act. Wattum paid Chengdu the $904,800.00 in four separate installments, the last of which was paid on June 22, 2023. Wattum's payments were made using digital currencies Tether USD and USD Coin.

Despite its receipt of Wattum's payment of the purchase price, Chengdu never delivered the Units or made them available for Wattum to pick up and has ceased all communications with Wattum. $316,680.00 was in a digital wallet housed on Binance, the largest cryptocurrency exchange in the world.

Chengdu is a Chinese Corporation with a principal place of business located at Wanda B1 Office Building, Honggutan District, Nanchang City, Jiangxi Province, China. D.E. 1 at ¶ 2. Jay is an individual who, upon information and belief, owns Chengdu and has a residential address of 525, Guangzhou Road, Qingyunpu District, Nanchang City, Jiangxi Province, China. *Id.* at ¶ 3. Carl is an individual that served as broker for the deal and has a residential address of Hang Yin Road Street, Apt. 5-1-1302 Hangzhou, Zhejiang Province, Yunhe Chenyuan community 31000, China. *Id.* at ¶ 4. Binance is also a global cryptocurrency exchange, and its headquarters is located at George Town, 23 Lime Tree Bay Ave, Cayman Islands. *Id.* at ¶ 6.

Through its business dealings with Carl, Wattum is in possession of, and has communicated with Carl through, his email address: 542920035@qq.com. *See* Declaration of Igor Kovalyshkin ("Igor Decl.") at ¶ 6. Wattum is also in possession of Carl's cell phone number (+86 18205709029) and Telegram username (@payrollkill). *Id.* at ¶¶ 7, 11. Telegram is a cloud-based encrypted instant messaging platform frequently utilized in the cryptocurrency industry. *Id.* at ¶ 10. Wattum communicated with Carl through Telegram with respect to the Chengdu transaction. *Id.* at ¶ 11. Therefore, Wattum seeks to serve Carl via email, text message, and through Telegram. Wattum also seeks to serve Jay/Chengdu through the WeChat and WhatsApp Accounts and email address listed on Chengdu's "Contact Us" page on their website. Chengdu maintains the following website in connection with its business: www.btcbitcoinminer.com. Declaration of Alex L. Braunstein ("Braunstein Decl.") at ¶ 3. The website has a "Contact Us" page which lists the entity's email, WeChat, and WhatsApp addresses. *Id.* at ¶ 4.

Lastly, Wattum requests to serve Binance via (1) email, (2) international mail and Fed-Ex, and (3) its American affiliate BAM Management US Holdings Inc. ("BAM"). BAM's Form D filed with the SEC identified Changpeng Zhao – Chairman and founder of Binance – in the "Related Persons" section. *Id.* at Exhibit C.

## LEGAL ARGUMENT

**I.    STANDARD FOR ALTERNATIVE SERVICE**

Service of process on a foreign corporation or foreign individual outside the United States may be affected by special order of the court "by other means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f)(3). While the United States and

5

China[2] are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"), Wattum seeks permission from the Court to utilize other permitted avenues to serve Primary Defendants and Nominal Defendants to avoid the complex, expensive, and slow methods outlined under the Hague Convention and to ensure the expeditious adjudication of its claims. *Arista Records LLC v. Media Servs. LLC*, N No. 06 CIV. 15319NRB, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008) ("Because there is no reason to believe that service would be effective if plaintiffs were required to serve [defendant] in accordance with the Hague Service Convention procedures, substituted service pursuant to Rule 4(f)(3) is appropriate"); *see also Nuance Communs. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) ("Rule 4 was not intended to burden plaintiffs with the Sisyphean task of attempting service through the Hague Convention procedures when a member state has categorically refused to effect service.") (internal quotation omitted).

"Service may be accomplished under Rule 4(f)(3) as long as it is (i) ordered by the court, and (ii) not prohibited by an international agreement." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011). The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court. *Prewitt Enters., Inc., v. The Org. of Petrol. Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1116 (9th Cir. 2002); *Brookshire Bros., Ltd. V. Chiquita Brands Int'l*, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"). Rule 4 does not require a party attempt service of process by those methods

---

2.   See https://www.hcch.net/en/states/hcch-members

enumerated under subsections (f)(1) and (f)(2) before petitioning the court for alternative relief under subsection 4(f)(3*). Rio Props., Inc.*, 284 F.3d at 1114-15; *see also Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1. In fact, service pursuant to Rule 4(f)(3) stands "on equal footing" with service pursuant to (f)(1) or (f)(2). *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1.

In addition to being ordered by the Court and not prohibited by an international agreement, service via alternative means must also comport with constitutional notions of due process. *Aliaga*, 272 F.R.D. at 620. As the Supreme Court has explained, the Due Process Clause requires every method of service to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As explained below, Wattum requests an Order allowing it to serve the Primary Defendants and Nominal Defendant Binance via alternative means of service which are not prohibited by international agreement and complies with the Due Process Clause.

## II. THE COURT MAY AUTHORIZE SERVICE THROUGH WATTUM'S REQUESTED MEDIUMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

### A. Wattum Requests to Serve Carl Via Email, Text Message, and Telegram

#### 1. Via Email

Initially, Wattum requests that the Court allow it to serve Carl via email. While not expressly authorized by the Hague Convention, service by email is "not prohibited if the receiving state has not objected to that alternate form of service." *Chanel, Inc. v. HandbagStore*, No. 20-CV-62121, 2021 WL 3060329, at *9 (S.D. Fla. June 30, 2021), report and recommendation adopted sub nom. C*hanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021 WL 3053396 (S.D. Fla. July 20, 2021) (internal quotation and citation omitted). In *Chanel*, the Magistrate Judge's Report and Recommendations found no error in the District Court's previous grant of

alternate service allowing service via email upon a Chinese entity, and stated "China's objection to the alternative means of service in Article 10 [of the Hague Convention]. . . does not preclude service by e-mail or website posting." *Id.* at \*10 (collecting cases).

Here, Defendant Carl was a broker/agent who was involved in the interactions between Wattum and Chengdu. He also served in this capacity for Wattum in many other transactions separate from this litigation. Prior to working with Wattum, Carl forwarded a curriculum vitae which included his email address: 542920035@qq.com. Igor Decl. at ¶ 6. Wattum also entered into a contract with Carl which required notices to be sent to Carl via this same email. *Id.* In the course of its business dealings with Carl, Wattum communicated with Carl via email. *Id.* Therefore, Wattum submits that service on Carl is not prohibited by international agreement and comports with constitutional notions of due process.

2. **Via Text Message**

Wattum also requests that it be allowed to serve Carl via text message. Service via text message is not prohibited by any international agreement. *See Chanel v. LuxTime*, 2017 WL 8794733, at \*7 (S.D. Fla. Dec. 13, 2017) ("[w]here a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10].") (internal quotation and citation omitted). Based upon this interpretation, courts have permitted service via text message, including to Chinese individuals. *Two Canoes LLC v. Addian Inc.*, 2023 WL 3052728, \*4-6 (D.N.J. April 21, 2023) (allowing service of subpoena on third-party individual living in China via text message); *United States v. Fleming*, 2021 WL 1036075, at \*1 (S.D. Ill. Mar. 11, 2021) (allowing service via e-mail and text message).

Here, given its former business relationship with Carl, Wattum has communicated with Carl on numerous occasions via text message to Carl's cell phone number: +86 18205709029. Igor Decl. at ¶ 7. In its experience communicating with Carl, Carl regularly monitored his text messages and responded. *Id.* at ¶ 8. In light of Wattum's previous communications with Carl via text message, service via text message, and the other methods requested herein, is reasonably calculated to apprise Carl as to the claims against him.

    **3. Via Messaging Service Telegram**

In addition to serving Carl via email and text message, Wattum seeks permission to serve him via Telegram – Carl's preferred method of communication in connection with cryptocurrency transactions. *Id.* at ¶ 10. Telegram is a cloud-based encrypted instant messaging platform. Carl's username on Telegram is @payrollkill. *Id.* at ¶ 12. Courts have permitted service via Telegram pursuant to Rule 4(f)(3). *See, e.g., Chegg, Inc. v. Doe*, 2023 WL 7392290, *4 (N.D. Cal. Nov. 7, 2023) (holding service through email and Telegram was "reasonably calculated under all the circumstances to appraise Defendant . . . of the pendency of the action and afford him an opportunity to present his objections.") (internal citations omitted); *CipherBlade, LLC v. CipherBlade, LLC*, 2024 WL 69164 (D. Alaska Jan. 5, 2024) (allowing service via Telegram).

Igor Kovalyshkin (Wattum's Chief Executive Officer) and Carl communicated on Telegram with respect to the transaction between Wattum and Chengdu. Igor Decl. at ¶ 11. These communications included, but were not limited to, communications prior to the transaction being effectuated in which Carl suggested using Chengdu as a vendor, brokered the deal, and facilitated payment from Wattum to Chengdu. *Id.* Indeed, communication via Telegram is frequently utilized in the cryptocurrency industry. By communicating with Wattum through Telegram with respect to the transaction at issue, Carl clearly and actively embraced communications through Telegram in

connection with his business. Furthermore, Carl's Telegram page indicates that he remains a user and recently used his Telegram account. *Id.* at ¶ 12.

Accordingly, service via Telegram is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Therefore, Wattum requests permission to serve Carl via Telegram.

### B. Wattum Seeks to Serve Jay and Chengdu Via Email, WeChat, and WhatsApp

#### 1. Via Email

Initially, Wattum requests to serve Chengdu and its owner Jay via email. As stated above *supra* Section II.A.1, service on Chinese individuals and entities via email is not prohibited by the Hague Convention and comparts with due process.

Through its diligence, Counsel for Wattum has found Chengdu's webpage at www.btcbitcoinminer.com. Braunstein Decl. at ¶ 3. Chengdu's webpage has a "Contact Us" link at https://www.btcbitcoinminer.com/contactus.html which contains the email address: xiaoxiaojun2019@gmail.com.""*Id.* at ¶ 4. Therefore, Chengdu and Jay have represented to the public that they can be contacted through this email address, which they must regularly monitor in connection with their business. Accordingly, Wattum requests an order permitting it to serve Chengdu and Jay via email.

#### 2. Via WeChat and WhatsApp

Chengdu's "Contact Us" page also provides numbers through which people can contact the company via WhatsApp (8615992702367) and WeChat (8619980599845 and 8615992702367). *Id.* at ¶ 4. By doing so, Chengdu and Jay have represented to the public that they can be contacted

through these means which they necessarily must regularly monitor. Jay also has a WeChat account with the username CXYminer-Jay which remains active. Igor Decl. at ¶ 16.

Many courts have allowed service (including service of Chinese individuals) through messaging services like WeChat pursuant to Rule 4(f)(3). *See, e.g., Leo Middle East FZE v. Zhang*, 2021 WL 11593016, at *3 (N.D. Cal. Nov. 2, 2021) (allowing for service of a Chinese individual through WeChat and stating "[b]ecause the Hague Convention does not expressly prohibit messenger platforms, like WeChat, the Court holds that it is a facially permissible means of service."); *Sinox Company Ltd. v. YiFeng Manufacturing Co. Ltd.*, 2022 WL 1017916 at *5 (W.D. Tex. Apr. 5, 2022) ("The Court finds that electronic service will better comport with due process so long as [plaintiff] also attempts to serve [defendant] through [defendants' supply chain manager's] WeChat profile, which she has already ostensibly used to conduct [defendant]'s business."). In *Zhang*, the Northern District of California allowed service via WeChat on Chinese individuals, stating "[c]ommunication platforms, such as Facebook, LinkedIn, or WeChat, can satisfy due process where they have been clearly and actively embraced in the relevant party's business communications and transactions." *Zhang*, 2021 WL 11593016 at *4.

In addition to WeChat, Courts have also allowed service on other similar messenger applications such as WhatsApp. *See, e.g., CKR Law LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (authorizing service on an individual foreign defendant through an email associated with the individual's business and a WhatsApp account, where plaintiff had already established defendant had used these accounts to communicate); *L.J. Star Incorp. v. Steel & O'Brien Mfg., Inc.,* 2020 WL 1957155, at *5–6 (S.D. Ohio Apr. 23, 2020) (allowing for service via WhatsApp and LinkedIn). Accordingly, both of these methods have been approved by courts as not violative of any international agreement and consistent with due process.

Furthermore, Jay regularly communicated with Wattum through WeChat. Indeed, following Chengdu's failure to make the Units available to Wattum, Kovalyshkin and Arseniy Grusha (Wattum's Chief Financial Officer) communicated with Jay via WeChat in order to request a return of Wattum's funds or receipt of the Units. Igor Decl. at ¶ 15. These communications occurred from June 29, 2023 to November 8, 2023 (the date of the last communication received from Jay). *Id.* at ¶ 15. Given Jay's use of WeChat, including in relation to the specific transaction at issue here, Jay and Chengdu have actively embraced communications through this medium in their business communications and transactions. Therefore, service upon Jay and Chengdu through WeChat will best apprise them of this action and allow them to respond.

As an additional means to ensure that Jay and Chengdu receive notice of the claims against them, Wattum seeks to serve Jay and Chengdu via WhatsApp. Chengdu has represented to the public that WhatsApp is an effective way to contact it on its "Contact Us" page of its website. Braunstein Decl. at ¶ 4. Consequently, service via WhatsApp will give notice to Jay and Chengdu of the claims asserted against them.

### C. Service on Binance Via Email, International Registered Mail and Fed-Ex, and U.S. Affiliate

#### 1. Via Email

Wattum also requests to serve Binance[3], an entity headquartered in the Cayman Islands, via email. The Cayman Islands is a territory of the United Kingdom, which is a signatory to the

---

3.  As set forth in the introduction, Binance is a global Crytpcurrency exchange and, reportedly, the largest cryptocurrency exchange in the world. There is no question that Binance does business in the United States. According to press reports, on May 2, 2024, Binance's CEO, Changpeng Zhao, received a four (4) month prison sentence on charges alleging multiple regulatory violations brought in the United States District Court for the Western District of Washington. In connection with the plea deal, Binace agreed to forfeit in excess of $4 billion

Hague Convention.[4] *See, e.g., Ghostbed, Inc. v. Casper Sleep, Inc.*, 315 F.R.D. 689, 691 fn 1 (S.D. Fla. 2016). Like China, the United Kingdom has not objected to service via email. *See, e.g., Birmingham v. Doe*, 593 F. Supp. 3d 1151, 1160 (S.D. Fla. 2022) (authorizing service on United Kingdom entity via email); *Richemont International SA v. montblanchot.com*, 2020 WL 5763931, at *2 (S.D. Fla. Sept. 28, 2020) (same). Wattum has done a diligent search and located the "inquiries@binance.us" email address from Binance's website. Braunstein Decl. at ¶ 5. Given that Binance lists this email on its website, Wattum believes that the email is regularly monitored and used in connection with Binance's business. Accordingly, Wattum requests that the Court enter an Order allowing it to serve Binance via email.

   **2. Via International Registered Mail/Fed-Ex**

Wattum also seeks to serve Binance at its headquarters located at George Town, 23 Lime Tree Bay Ave, Cayman Islands. The Cayman Islands is a signatory to the Hague Convention that has not objected to Article 10(a). *See Ghostbed, Inc. v. Casper Sleep Inc.,* 315 F.R.D. at 694 (allowing service on defendant via international mail at last known address in the Cayman Islands). In allowing service via international mail on defendant, the Southern District of Florida, in *Ghostbed*, stated "as service of the Amended Complaint and Summons via international mail is reasonably calculated to give notice to ICS and is not prohibited by Cayman Islands law, this method satisfies Federal Rule of Civil Procedure 4(f)(3)." *Id.* at 691. Accordingly, Wattum requests that it be permitted to serve Binance at its headquarters via international registered mail and Fed-Ex.

---

dollars to the United States. *See* https://www.cnbc.com/2024/04/30/binance-founder-changpeng-zhao-cz-sentenced-to-four-months-in-prison-.html.

   4.      *See* https://www.hcch.net/en/states/hcch-members

### 3. Via U.S. Affiliate

Binance has a United States-based affiliate – BAM Management US Holdings Inc. – with an address at One Letterman Drive, Building C Suite C3-800 in San Francisco, California 94129 according to its Form D filed with the SEC. Braunstein Decl. at ¶ 6, Exhibit A. The Form D identified Changpeng Zhao – Chairman and founder of Binance – in the "Related Persons" section as an individual that received stock. *Id.* at Exhibit A. Consequently, Wattum seeks the Court's permission to serve Binance through its affiliate BAM Management Holdings Inc. at the above San Francisco address. Service via a United States-based affiliate has been allowed by federal courts. *In re Telescopes Antitrust Litigation*, 2020 WL 13593700, at *1-2 (N.D. Cal. Dec. 2, 2020) (allowing service of process on China-based defendants through, *inter alia*, Counsel for U.S. based affiliates and U.S. affiliates themselves); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 306-307 (S.D.N.Y. 2009) (allowing for service of subpoena on United States affiliate). Indeed, in *In re Telescopes Antitrust Litigation*, the Northern District of California expressly allowed plaintiff to serve Chinese entities via their United States affiliates even without attempting to serve defendants via the Hague Convention stating "it is not necessary for Plaintiffs' to have attempted service through the Hague Convention or letters rogatory before seeking an order authorizing alternative service from the Court." *Id.* at 2020 WL 13593700, at *1-2. The same reasoning should apply here. Wattum should be permitted to serve Binance through its United States-based affiliate.

### 4. Via Board Member/Attorney Xin Wang

As another way to ensure that Binance receives proper notice of this lawsuit, Wattum requests that the Court allow it to serve Binance through its Board Member Xin Wang. On April 1, 2024, Binance announced three new board members including Bayview Acquisition Corp. Chief

14

Executive Officer Ms. Wang.[5] According to Binance's website, Ms. Wang is "a qualified lawyer in the State of California and a Solicitor of England and Wales" and an "independent board member of Binance's Board of Directors." Braunstein Decl. at ¶ 8. Binance's website also states that Ms. Wang is a former White and Case attorney who received a juris doctorate from Boston University School of Law. *Id.* Wattum requests an Order permitting it to serve Ms. Wang via email. *In re Zantac (Ranitidine) Products Liability Litigation*, 2021 WL 1989928 at *2 (allowing for service via email with counsel for U.S. affiliate copied); *Likas*, 2020 WL 2561947, *2 (allowing for service of U.S.-based Counsel via email); *see also Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, *10 (S.D.N.Y. Mar. 31, 2014) (ordering plaintiff to serve summons and complaint on defendants' counsel's New York office); *Forum Fin. Group, LLC v. Harvard College*, 199 F.R.D. 22, 23–24 (D. Me. 2001) (permitting service of process upon a defendant located in Russia by sending the summons and complaint by certified mail to the defendant's attorneys at the New York law firm).

Wattum will also send courtesy copies to Ms. Wang's address via international mail and Fed-Ex. According to publicly available documents from the State Bar of California, Ms. Wang has an address of BHR, 3101 China Central Place, Tower 2, No. 79 Jianguo Rd, Beijing 100025, China. Braunstein Decl. at ¶ 10. Accordingly, Wattum requests that the Court allow it to serve the Complaint on Binance by sending it to its Board Member, Ms. Wang, via email and international mail and Fed-Ex.

---

5. https://blockworks.co/news/binance-adds-independent-board-members

## **CONCLUSION**

These various avenues pursuant to which Wattum seeks to serve Primary Defendants and Binance will ensure the requirements of due process have been met and that all parties receive proper notice as to the claims against them. Therefore, Wattum respectfully requests that the Court enter an Order allowing it to serve Primary Defendants and Binance through the means requested above.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

s/ *Alex Braunstein*
Alex L. Braunstein, Esq.
Florida Bar No. 98289
777 S. Flagler Dr., Suite 1700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602
Tel: (561) 804-4497
abraunstein@foxrothschild.com