UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21052-DPG

WATTUM MANAGEMENT, INC.,

    Plaintiff,

v.

CHENGDU CHENXIYU TECHNOLOGY
CO., LTD. a/k/a CHENGDUCHENXIYU
TECHNOLOGY CO., LTD, DENG JIE,
BAO CARL SHICUN and John Does 1-10

    Defendants.

and

OKX a/k/a OKEx; and
Binance Holdings Ltd. a/k/a
Binance

    Nominal Defendants
_____/

**RESPONSE OF PLAINTIFF, WATTUM MANAGEMENT, INC.
TO THE COURT'S JANUARY 12, 2025 ORDER TO SHOW CAUSE**

Plaintiff, Wattum Management, Inc. ("Wattum"), by and through its undersigned counsel, respectfully submits this Response to the Court's Order to Show Cause entered on January 12, 2025:

    **I.    PRELIMINARY STATEMENT**

    1.    On January 12, 2025, the Court entered the following paperless Order to Show Cause related to the status of service of process in this action:

> PAPERLESS ORDER TO SHOW CAUSE REGARDING SERVICE. Federal Rule of Civil Procedure 4(m) requires service of summons and complaint to be perfected upon defendants within 90 days after the filing of the complaint. Plaintiff filed this action on

167129493.1

>March 18, 2024, and, to date, there is no indication in the court file that Primary Defendants Chengdu Chenxiyu Technology Co., Ltd., Deng Jie, and Bao Carl Shicun and Nominal Defendant Binance Holdings Ltd. have been served with the summons and Complaint. Accordingly, within five (5) days of this Order, Plaintiff shall perfect service upon the Primary Defendants and Nominal Defendant Binance Holdings Ltd. or show cause why this action should not be dismissed for failure to perfect service of process. Failure to comply with this Order shall result in a dismissal without prejudice and without further notice. Signed by Judge Darrin P. Gayles on 1/12/2025. (hs01)

2. On January 17, 2025, Plaintiff filed an Affidavit of Service confirming that service of process upon Nominal Defendant Binance Holding Ltd. was effectuated on October 22, 2024. *See* D.E. 17.

3. With respect to Defendants Chengdu Chenxiyu Technology Co., Ltd. ("Chengdu"), Deng Jie ("Jay"), and Bao Carl Shicun ("Carl") (Chengdu, Jay and Carl collectively referred to as the "Primary Defendants") who, to the best of Plaintiff's knowledge, are residents and citizens of the People's Republic of China[1] ("PRC" or "China"), Plaintiff has been and is continuing to work with Viking Advocates, LLC ("Viking"), a consulting law firm specializing in cross-border service under the Hague Service Convention, to investigate the Primary Defendants and determine whether the Convention is applicable and/or Hague Service is possible through the PRC's Central Authority.

4. As set forth more fully below, these investigative efforts were undertaken following this Court's Order of August 13, 2024 denying, without prejudice, Plaintiff's Motion for Alternative Service and said efforts are ongoing. Furthermore, through these efforts, Plaintiff

---

[1] The paperless Order of January 12, 2025 indicates that Rule 4(m) requires service of summons and complaint to be perfected upon defendants within 90 days after the filing of the complaint. It is respectfully submitted that the 90-day period established by Rule 4(m) does not apply to service in a foreign country; instead, a diligence standard applies, as discussed *infra*.

discovered that Defendant Chengdu, an entity organized in mainland China (not Hong Kong), dissolved *prior to the events leading up to this case*.

5. Among other things, Plaintiff, in consultation with Viking, is evaluating whether the Hague Convention applies where, as here, the foreign entity is dissolved and/or whether the PRC's Central Authority can and/or would effectuate service under these circumstances. Accordingly, for reasons set forth below, Plaintiff respectfully requests an additional thirty (30) days to complete its investigative efforts, determine the applicability, *vel non*, of the Hague Convention under these circumstances, evaluate questions of futility under applicable law and potentially renew its Motion for Alternative Service offering evidence of Plaintiff's service efforts, expert reports and other information pertinent to the analysis.

6. The Nominal Defendants, who are prominent cryptocurrency exchange platforms, have in their possession, custody and control Defendants' cryptocurrency assets which were frozen as a result of legal proceedings including reports to law enforcement authorities and/or the Internet Crimes Complaint Center.

7. Plaintiff intends to demonstrate that the Primary Defendants were properly and/or adequately notified of this Action and, if the Primary Defendants fail to respond, proceed to judgment.

## II.  RELEVANT BACKGROUND

8. Wattum initiated this matter by filing its Complaint on March 18, 2024. D.E. 1. Per the Complaint, Wattum seeks to recover approximately $900,000 in cryptocurrency assets ("Crypto Assets") transferred by Wattum to the Primary Defendants, who are based in China and who held themselves out as distributors of powerful cryptocurrency mining computers.

9. Primary Defendants coaxed Wattum into paying $904,8000 in four separate installments, the last of which was paid on June 22, 2023, for the mining equipment. However, despite its receipt of Wattum's payment of the purchase price, Chengdu never delivered the Units or made them available for Wattum to pick up and has ceased all communications with Wattum.

10. Through investigative efforts, Nominal Defendants Binance and OKX froze the Primary Defendants' cryptocurrency assets pending further order of court. Binance and OKX have been named as Nominal Defendants because they maintain possession, custody and control over the virtual wallets in which the funds that Defendants converted are located.

11. On May 17, 2024, Wattum filed a Motion for Alternative Service Upon Defendants and Nominal Defendant Binance. D.E. 7.

12. In its Motion, Wattum requested *inter alia* that the Court allow it to serve Primary Defendants through a combination of emails, text messages, Telegram, WhatsApp and WeChat messaging platforms used by the Primary Defendants to conduct business.

13. Wattum further requested that the Court allow it to serve Binance through its United States affiliates/locations and its U.S.-based agent.

14. On August 13, 2024, the Court entered a Paperless Order denying Wattum's Motion for Alternative Service without prejudice. The text entry on the docket stated, in pertinent part:

> "[T]he decision to issue an order allowing service by alternate means lies solely within the discretion of the district court." *Chanel, Inc. v. Lin*, No. 08-CIV-23490, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (citations omitted). Courts are generally "reluctant to use their discretion to authorize alternate service when Hague Convention service is available.*" Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prods. Co., Ltd.*, No. 17-CIV-60431, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018). Typically, district courts in the Eleventh Circuit permit alternate service "only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed." *Id.* at *3.

> At this time, the Court does not find that alternative service is warranted as to Primary Defendants Chengdu Chenxiyu Technology Co., Ltd., Deng Jie, and Bao Carl Shicun and Nominal Defendant Binance Holdings Ltd. Plaintiff has not shown that service under the Hague Convention is impossible or will take an unreasonably long time. Further, Plaintiff does not allege that Defendants' locations are unknown or that they have attempted to evade service.

15. As of August 13, 2024, no service appeared on the docket.

16. On September 9, 2024, Counsel for OKX and Wattum filed a Stipulation excusing OKX from appearance at future court hearings unless otherwise ordered by the Court due to OKX's nominal status. D.E. 15.  To the extent this Stipulation meets with the Court's approval, Wattum respectfully requests that it be entered as an Order of Court as the parties intended.

17. Following the Order denying Wattum's Motion for Alternative Service, Wattum undertook an investigation regarding other pending legal proceedings against Binance.  As a result of said investigation, Wattum identified a prominent U.S. law firm that represented Binance in one or more active federal court matters.  On October 1, 2024, Wattum gave notice of this action to said law firm and requested that Binance waive and/or accept service of process, like OKX did.

18. After receiving no response, Wattum undertook a further investigation and determined that other litigants successfully served Binance in the Cayman Islands through an organization known as The Security Centre ("TSC").  As a result, and as set forth in ¶ 2 above, on October 22, 2024, TSC served Binance.

19. Furthermore, Wattum promptly engaged Viking, a U.S. law firm specializing in cross-border service of process, especially under the Hague Convention, to investigate the Primary Defendants, determine the applicability, *vel non*, of the Convention based on information known or knowable about the Primary Defendants (including their whereabouts and official addresses for service through the PRC's Central Authority), and otherwise assist Plaintiff in effectuating service

and/or demonstrating reasonable and diligent efforts under this Court's Order of August 13, 2024 and applicable law.

20. Viking and its principal, Aaron Lukken, Esq. ("Lukken"), are highly regarded specialists in cross-border service, including service under the Hague Convention. Viking has handled thousands of cases involving cross-border service, works with investigators globally and frequently and directly interacts with Central Authorities of countries who are signatories to the Convention. Lukken has appeared as an expert on international service and service efforts in numerous U.S. proceedings including matters in various United States District Courts.

21. Viking, together with its international investigators, undertook, and are still in the process of undertaking, an extensive investigation into Primary Defendants' locations abroad.

22. Unfortunately, Viking's investigators were not able to confirm official addresses for the individual Defendants Jay or Carl, a prerequisite to any Request for service under the Hague Convention directed to the PRC's Central Authority. *See,* Hague Convention, Art. 1, 20 U.S.T. 361 (1969) (Hague Convention is not applicable "where the address of the person to be served with the documents is not known."); *Trapenard v. Clester*, 2023 WL 2264177, *3 (M.D. Fla. Feb. 28, 2023).

23. Viking's investigation also revealed that Defendant Chengdu's official corporate charter (the entity is formed and/or organized under the laws of the PRC) was cancelled, potentially *prior to* the events giving rise to this lawsuit. In other words, the Primary Defendants were trading through an entity that was not in good standing or potentially dissolved.

24. Furthermore, the investigation revealed that Chengdu's registered address on the official registry maintained by the PRC and/or its political subdivisions was different from the address on the Proforma Invoice that it provided in connection with mining equipment transaction.

In this regard, the address provided on the Proforma Invoice was Wanda B1 Office Building, Honggutan District, Nanchang City, Jaingxi Province, China whereas the registered address is No. 2205 and 2206, 22nd Floor, Building 2, No. 530, Middle Section of Tianfu Avenue, High-tech Industrial Development Zone, Chengdu, China.

25. As is customary in cross-border service matters, Viking has contacted the Central Authority of the PRC to determine whether the PRC would even honor a formal request for service under the Hague Convention upon a dissolved Chinese entity whose stated address on commercial invoices was different than the address listed in the PRC's corporate registry. To be sure, the Central Authority may never provide conclusive feedback given that the Authority is only haphazardly responsive to inquiries emanating from the United States.

26. Thus, Plaintiff, who has pursued service efforts diligently and who is determined to bring this Action to a speedy and final resolution (most likely via a default judgment), respectfully requests an additional thirty (30) days to complete its investigation, report back to the Court, and/or potentially renew its Motion for Alternative Service with evidence of service efforts, expert reports and other information potentially relevant to the service analysis.

### III.   ARGUMENT

27. While the Court's Order to show cause cites Fed. R. Civ. P. 4(m) for the proposition that service must be perfected within 90 days after the filing of the complaint, notably, Rule 4(m) provides "[t]his subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A)."

28. Accordingly, Rule 4(m) "does not apply to service in a foreign country under Rule 4(f)." *Rudnikas v. Gonzalez*, 2024 WL 4635536 (S.D. Fla. Sept. 6, 2024).

29. For foreign defendants, the Eleventh Circuit applies a diligence standard when determining whether to dismiss a complaint for lack of service. *See Harris v. Orange S.A.*, 636 Fed. Appx. 476, 485-86 (11th Cir. 2015) ("We thus join the majority of circuits to have considered the issue in holding that a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant."); *see also Steinberg v. Barclay's Nominees (Branches) Ltd.*, 2008 WL 4601043, *7 (S.D. Fla. Sept. 30, 2008) (excusing twelve-month delay in serving foreign defendant under "'flexible due diligence' standard recognized for service under the Hague Convention.").

30. To avoid dismissal for lack of diligence, a plaintiff must simply demonstrate "at least as much as would be required to show excusable neglect . . ." *See Harris*, 636 Fed. Appx. at 486 (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir.1995)).

31. Here, Plaintiff diligently pursued service efforts since the Order of August 13, 2024.

32. Furthermore, in addition to service on the Nominal Defendants, Wattum engaged a highly regarded international process service specialist and, at considerable expense, diligently pursued the requisite investigation and service efforts on the Primary Defendants in China.[2]

33. Plaintiff's investigation efforts are ongoing. Furthermore, Plaintiff, in consultation with Viking, continues to (i) wait for a response from the PRC's Central Authority; (ii) gather information on whether the PRC's Central Authority would honor a request for Hague Convention request under these circumstances; (iii) determine the anticipated delay in effectuating service

---

[2] Out of an abundance of caution and because Binance has not formally appeared, Wattum also requested that Viking formally effectuate Hague Service through the Central Authority designated by the Cayman Islands. This requires Wattum and/or Viking to engage a UK-qualified solicitor to instruct the process server. Furthermore, in parallel, Wattum is also effectuating service by mail given that the Cayman Islands has not taken an exception to Article 10(a) of the Hague Convention.

under the Hague Convention, assuming the request were honored; (iv) evaluate the applicability, *vel non*, of the Hague Convention given what is known and/or knowable about the Primary Defendants at this time. *See,* Hague Convention, Art. 1, 20 U.S.T. 361 (1969) (Hague Convention is not applicable "where the address of the person to be served with the documents is not known."); *Trapenard v. Clester*, 2023 WL 2264177, *3 (M.D. Fla. Feb. 28, 2023).

34.  Wattum respectfully requests thirty (30) days to compete its investigation and determine whether a renewed Motion for Alternative Service is appropriate. *See* Court's Text Order dated August 13, 2023 (denying Wattum's Motion for Alternative Service in part because "Plaintiff does not allege that Defendants' locations are unknown or that they have attempted to evade service.").

WHEREFORE, Plaintiff, Wattum Management, Inc. respectfully requests that this Court dissolve the Show Cause Order and allow Wattum to provide a status update within thirty (30) days of the Court's Order.

Dated: January 17, 2025

Respectfully Submitted:
**FOX ROTHSCHILD LLP**

s/  *Alex Braunstein*
Alex L. Braunstein, Esq.
Florida Bar No. 98289
D. Wesley Meehan, Esq.
Admitted *Pro Hac Vice*
777 S. Flagler Dr., Suite 1700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602
Tel: (561) 804-4497
abraunstein@foxrothschild.com
wmeehan@foxrothschild.com