**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-21052**

WATTUM MANAGEMENT, INC.,

Plaintiff,

v.,

CHENGDU CHENXIYU TECHNOLOGY CO. LTD. *et al*.,

Defendants,
_________________________________/

**WATTUM MANAGEMENT, INC.'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS CHENGDU, BAO CARL SHICON, AND DENG JIE**

Plaintiff, Wattum Management, Inc. ("Wattum"), pursuant to Rule 55 of the Federal Rules of Civil Procedure and in compliance with this Court's Order on Default Procedure (D.E. 32), respectfully moves for a Final Defendant Judgment against Defendants, Chengdu Chenxiyu Technology Co., Ltd. a/k/a Chengduchenxiyu Technology Co., Ltd. ("Chengdu"), Bao Carl Shicun ("Carl") and Deng Jie ("Jay") (Chengdu, Carl and Jay referred collectively to as "Primary Defendants").

## I. Background

1. This is an action to recover over $900,000 in cryptocurrency assets ("Crypto Assets") transferred by Wattum to the Primary Defendants, who are based in China and who held themselves out as distributors of powerful cryptocurrency mining computers, as well as other damages directly caused by Primary Defendants' conduct.

2. Specifically, Wattum and Defendant Chengdu entered into a Purchase Agreement on May 15, 2023 pursuant to which Chengdu agreed to sell and deliver 650 BITMAIN Antminer

s19pro+ 120TH ASIC miners (the "Mining Equipment") to Wattum for a $904,800.00. *See* D.E. 1 at Exhibit B.

3. As alleged in the Verified Complaint, the Primary Defendants absconded with the Crypto Assets without delivering any Mining Equipment and then broke off communications. *See* D.E. 1 at ¶¶ 29-37. Some of the Crypto Assets may reside on the cryptocurrency exchanges of Nominal Defendants OKX a/k/a OKEx ("OKX") and Binance Holdings Ltd. a/k/a Binance ("Binance") (OKX and Binance collectively referred to as "Nominal Defendants").[1] *Id.* at ¶¶ 51, 65.

4. The Primary Defendants then transferred and/or laundered the Crypto Assets through multiple mediate cryptocurrency wallets maintained by straw mediate transferees on, *inter alia,* exchanges operated by the Nominal Defendants. These transfers were intended to disguise illegal activity, conceal tracing and frustrate Wattum's rights. *Id.* at ¶¶ 46-70.

5. Consequently, and after reporting this theft to law enforcement, on March 18, 2024, Wattum filed a lawsuit against Primary Defendants and Nominal Defendants alleging the following causes of action against Primary Defendants: (Count I) Breach of Contract; (Count II) Unjust Enrichment; (Count III) Fraud; (Count IV) Conversion; (Count V) Civil Theft; (Count VI) Tortious Interference with Existing Contracts; and (Count VII) Tortious Interference with Advantageous Business Relationships. *See generally*, D.E. 1.

6. The Primary Defendants have defaulted and Wattum seeks a final judgment for losses arising from their actionable conduct. *See* D.E. 35.

---

[1] Binance has been dismissed without prejudice. *See* D.E. 36. Further, Wattum and OKX entered into a stipulation as to OKX's nominal party status pursuant to which OKX's Answer to the Complaint was waived and appearances in the litigation excused unless otherwise ordered. *See* D.E. 31.

7. At issue is an order placed and paid for by Wattum on behalf of a third-party customer who later sued Wattum for non-performance. In this regard, as a result of Primary Defendants' conduct, Wattum was forced to incur costs and fees relating to defending a lawsuit brought against it styled *First Argentine Mining Co. v. Wattum Management, Inc., et al.*, Case No. 1:24-cv-21044-DPG, Southern District of Florida (the "FAMCO Matter").

8. A more comprehensive summary of the facts and events giving rise to this litigation are contained within the Verified Complaint and the Declaration of Igor Kovalyshkin ("Wattum Declaration" or "Wattum Decl.") submitted herewith as **Exhibit A**, both of which are incorporated herein by reference.

## Order for Alternative Service

9. After attempting to locate and serve Primary Defendants, Wattum filed a Motion for Alternative Service upon Defendants. D.E. 7. Initially, the Motion was denied without prejudice. D.E. 14.

10. On March 20, 2025, Wattum filed a Renewed Motion for Alternative Service upon Primary Defendants. D.E. 20.

11. On May 8, 2025, the Court granted Wattum's Renewed Motion for Alternative Service [D.E. 20] and ordered Wattum to serve Chengdu and Jay via email to the email address xiaoxiaojun2019@gmail.com; via message to the WhatsApp account 8615992702367; via message to WeChat 8619980599845 and 8615992702367; and via OKX push notification. D.E. 23.

12. The Court also ordered Wattum to serve Carl via his email at 542920035@qq.com; text message to the phone number +86 18205709029; and message to Telegram account @payrollkill. *Id.*

**Compliance With Order for Alternative Service**

13. On May 8, 2025, Wattum served Chengdu and Jay via email to xiaoxiaojun2019@gmail.com and 542920035@qq.com; via message to the WhatsApp account 8615992702367; and message to the WeChat accounts 8619980599845 and 8615992702367. *See* D.E. 24; D.E. 25; D.E. 29, 30.

14. On May 8, 2025, Wattum also served Carl via email (D.E. 25) and Telegram (D.E. 28).

15. Lastly, on or about May 8, 2025, Wattum served Chengdu and Jay by requesting that OKX send a push notification directly to Defendants. Plaintiff's counsel also attempted to effectuate service via text message but those texts did not go through.

**Primary Defendants Laugh At Order for Alternative Service**

16. Defendants responded to service by WeChat. On May 9, 2025, Primary Defendants sent a message in Chinese, a copy of which was attached as **Exhibit "1"** to the Request for Clerk's Entry of Default filed earlier in this case. According to a translation, the message reads "hehe". *See* D.E. 34 at ¶ 8; *see also* D.E. 34-1.

**Defendants Effectuated Lawful Service of Process**

17. On May 28, 2025, Wattum filed its proof of service on Carl. D.E. 28.

18. On June 16, 2025, Wattum filed its proof of service on Chengdu and Jay. D.E. 29, 30.

19. On July 14, 2025, this Court found that Wattum effectuated service of the summons and complaint on Chengdu, Carl, and Jay. D.E. 32.

**Primary Defendants' Default**

20. On July 15, 2025, Wattum filed a Motion for Clerk's Entry of Default against Primary Defendants. D.E. 34.

21. On the same date, July 15, 2025, the Clerk of Court entered a Clerk's default against all of the Primary Defendants. D.E. 35.

22. Pursuant to, and in compliance with, this Court's July 14, 2025 Order on Default Procedure, Wattum hereby moves for Final Default Judgment against Defendants Bao Carl Shicun, Chengdu Chenxiyu Technology Co., Ltd., and Deng Jie. *See* D.E. 32; *see also* D.E. 39.

**II. Memorandum of Law**

**A. This Court has Jurisdiction Over the Action and Defendants**

"As a preliminary matter, when a judgment is sought against a party who has failed to plead or otherwise defend, the Court must ensure it has jurisdiction over both the subject matter and the parties." *Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Est., LLC*, No. 20-CV-80842-RAR, 2023 WL 6037450, at *2 (S.D. Fla. Sept. 15, 2023) (citing *Cobbler Nevada, LLC v. Jokic*, No. 8:15-cv-2653-T-27TBM, 2016 WL 3511765, *2 at n. 3 (M.D. Fla. Jun. 1, 2016), *report and recommendation adopted*, 2016 WL 3538375 (M.D. Fla. Jun. 22, 2016)). The well-pleaded allegations in Wattum's Complaint demonstrate that this Court has both the requisite subject matter and personal jurisdiction to enter a Default Judgment against Primary Defendants. Further, by defaulting, Primary Defendants have admitted the Verified Complaint's well-pleaded allegations. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1294 (S.D. Fla. 2016).

***i. The Court has subject matter jurisdiction over this action.***

As alleged in the Complaint, pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action because it is between citizens of Florida and citizens of a foreign state and the amount in controversy exceeds $75,000.00, exclusive of fees and costs. *See* D.E. 1, ¶ 10.

***ii. The Court has personal jurisdiction over Primary Defendants***

This Court also has personal jurisdiction over Primary Defendants. Primary Defendants are subject to the jurisdiction of Florida courts because they operated, conducted, engaged in, or carried on a business or a business venture in Florida and engaged in substantial and not isolated activity in Florida. Fla. Stat. § 48.193. Additionally, a substantial portion of the facts giving rise to the causes of action set forth in the Verified Complaint occurred in this jurisdictional district of this Court. Specifically, Primary Defendants breached a contract with a company headquartered in Florida, directed tortious conduct into the state of Florida and caused harm realized in Florida. *See* Fla. Stat. § 48.193(1)(a)(1),(6), and (7). Consequently, Primary Defendants are subject to personal jurisdiction in this Court.

**B. A Default Final Judgment Should be Entered Against Primary Defendants**

***i. A Clerk's Default Has Been Entered.***

Plaintiff is entitled to entry of a Final Default Judgment against Primary Defendants pursuant to Rule 55(b). "'Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure for obtaining default judgment.'" *Hunters Run Prop. Owners Ass'n,*, 2023 WL 6037450, at *2 (quoting *Federated Life Ins. Co. v. Fifth Third Bank*, No. 2:14-cv-568-FtM-38CM, 2015 WL 859393, at *1 (M.D. Fla. Feb. 27, 2015)). First, the clerk of the court must enter a clerk's default against a defendant that fails to plead or otherwise defend a lawsuit. *Id.*; *see* Fed. R. Civ. P. 55(a). Here, the Clerk entered a default against Primary Defendants on July 15, 2025. D.E. 35.

Second, after entry of a clerk's default, "a court may enter a default judgment only if 'the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.'" *Federated Life*, 2015 WL 859393, at *2 (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also* Fed. R. Civ. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.").

***ii. The Complaint and Wattum Declaration Establish Wattum's Right to the Relief Requested.***

Initially, "[a] defendant by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC*, 561 F.3d at 1307. Moreover, a Court may determine damages without holding a hearing "where all essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). In its Verified Complaint, the Wattum Declaration and documents submitted herewith, Wattum establishes its right to recovery for breach of contract, fraud, conversion, civil theft, tortious interference with existing contracts, tortious interference with advantageous business relationships. *See* D.E. 1; Wattum Decl. Each asserted Count is addressed in turn.

**1. <u>Breach of Contract (Count I)</u>**

Wattum has established its right to recovery for Primary Defendants' material breach of the parties' contract. Under Florida law, which governs this dispute, a party claiming breach of contract must prove (1) a valid contract; (2) a material breach; and (3) damages. *J.J. Gumberg Co.*

*v. Janis Svcs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003). Here, the well-pleaded facts of the Complaint establish Wattum's right to recover for it breach of contract cause of action. *See* D.E. 1 at ¶¶ 77-84. Wattum and Chengdu entered into a purchase agreement on May 15, 2023. *Id.* at Exhibit B. Pursuant to the purchase agreement, Wattum paid Chengdu $904,800.00. Chengdu breached the agreement by failing to deliver the Mining Equipment it contractually agreed to provide and absconded with the funds. All of these facts are established in Wattum's Complaint and the Wattum Declaration. *See* D.E. 1 at ¶¶ 78-84; Wattum Decl. at ¶¶ 5-10. Therefore, Wattum is entitled to recover damages on its breach of contract cause of action in the form of the amount paid to Primary Defendants **and** Wattum's lost profits. The magnitude of the recoverable damages is discussed more fully below.[2]

**2. Fraud (Count III)**

Wattum's Complaint established that Primary Defendants are liable for fraud. The elements of fraud under Florida law are as follows: "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So.2d 625 (Fla.1985)). Fraudulent inducement is actionable even where a contract exists provided that the misrepresentations are separate and apart from those contained in the parties' contract. *See, e.g., Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds Inc.*, 982 F. Supp. 862, 866-67 (M.D. Fla. 1997) ("fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from breach of contract.").

---

[2] Wattum respectfully submits that this application establishes a contract and breach. If the Court agrees, Wattum does not intend to pursue its claim for unjust enrichment which was plead in the alternative.

Here, there is evidence that Primary Defendants urged Wattum to transfer funds as quickly as possible even before a formal order was generated citing economic urgency and/or potential supply shortages. Wattum Decl. at ¶ 47. In fact, when these representations were made, the entity known as Chengdu – which generated the formal order – was already dissolved (a fact discovered during alternative service efforts). *Id.* at ¶ 92. Then, immediately upon transfer, Primary Defendants dispersed the funds through various accounts and sub-accounts in a manner intended to conceal the location of the funds. *Id.* at ¶¶ 27, 32-36. After law enforcement became involved, Primary Defendants admitted liability, returned a small portion of the funds and promised to return the rest but never did. *Id.* at ¶¶ 16, 42. And even after Wattum effectuated alternative service, Primary Defendants conveyed laughing emoticons. *See* D.E. 34 at ¶ 8; *see also* D.E. 34-1. There is no question that Primary Defendants committed an independent fraud and are liable for such conduct.

As to the damages of this claim, Primary Defendants' fraud has harmed Wattum as explained herein. *See infra* Legal Argument § B.iii. Accordingly, Wattum has established the requisite elements of fraud, and judgment should be entered on its behalf for this count.

**3. <u>Civil Theft (Count V)</u>**

Primary Defendants are liable to Wattum for civil theft under Fla. Stat. § 772.11. To establish an action for civil theft, Wattum must establish the elements of theft and criminal intent. *Abdo v. Abdo*, 263 So. 3d 141, 145 (Fla. 2d DCA 2018). When the theft is also the subject of a contract, a civil theft claim requires proof of "an intricate sophisticated scheme of deceit and theft." *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000) (citing *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So. 2d 766 (Fla. 4th DCA 1990)). Florida courts have found this scheme to be true when a defendant lawfully obtains funds and thereafter misappropriates

them. *Empire Corvette of America, Inc. v. Just Toys Classic Cars, LLC*, No: 6:18-cv-26, 2018 WL 7489867, *6 (M.D. Fla. May 1, 2018). One commits theft if he or she "knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:

> (a) Deprive the other person of a right to the property or a benefit from the property; or
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

*Opus Grp., LLC v. Int'l Gourmet Corp.,* No. 1:11-CV-23803-UU, 2013 WL 12383483, 5 (S.D. Fla. Mar. 12, 2013); Fla. Stat. § 812.014. "Criminal intent is . . . the intent to 'temporary or permanently' deprive or appropriate the property of another." *Goodner v. Jab Kids, LLC*, No. 20-cv-80938, 2020 WL 13369712, *3 (S.D. Fla. Nov. 30, 2020) (quoting *Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc.*, 534 So. 2d 1187, 1191 (Fla. 4th DCA 1988)).

Here, Primary Defendants committed theft by knowingly obtaining Wattum's Crypto Assets with the intent to permanently appropriate the assets for their own benefit. Moreover, while the civil theft arose out of a contractual relationship, Primary Defendants' theft constituted a "sophisticated scheme of deceit and theft" such that Primary Defendants' conduct goes well beyond their contractual duties. In this regard, Wattum has established that Primary Defendants fraudulently induced Wattum to enter into the contract with a dissolved entity and then completed numerous transfers of the Crypto Assets to conceal the assets and utilize them for their own personal gains. This District Court has recognized that allegations of intent to defraud satisfy the felonious intent requirement for civil theft claims. *Hays Grp., Inc. v. Aichele*, No. 18-CV-20726-UU, 2018 WL 8223773, 5 (S.D. Fla. July 5, 2018) (holding that Plaintiff relying upon allegations of fraud to infer criminal intent was sufficient). Furthermore, Primary Defendants' felonious intent

is also demonstrated by their acts (cutting off communications and effectuating transfers), extrajudicial admissions (unfulfilled promise to return all of the money and subsequent "hehe" messages) and judicial admissions (arising from the default).

With respect to the civil theft claim, Wattum acknowledges that it did not serve a formal pre-litigation demand drafted by counsel. However, Wattum's other pre-litigation demands satisfy the statute's requirements, which Courts in this District and Circuit enforce leniently. *See, e.g., Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011) ("Florida law does not require a demand for the return of the money in order to state a cause of action for civil theft."); *Continental 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018) (refusing to dismiss civil theft cause of action due to failure to make demand, stating demand requirement in the statute is "not substantive because it does not relate to the activities that give rise to the cause of action itself," noting that courts in the 11th Circuit have enforced the requirement "leniently" and collecting cases). Indeed, Wattum has made numerous demands that Primary Defendants return the Crypto Assets, all of which have been ignored. *See* Wattum Decl. at ¶¶ 39-40.

Consequently, Wattum has established its right to recover under its civil theft cause of action. As the prevailing party on a civil theft claim, Wattum is entitled to treble damages, reasonable counsel fees and other amounts discussed more fully below.

**4. <u>Conversion (Count IV)</u>**

Wattum has established a right to recover on its claim of conversion. Conversion is an unauthorized act which deprives someone of their property either permanently or for an indefinite period of time. *Koskinen v. Greener Polymers, Inc.*, No. 17-81096-CV, 2019 WL 7837279, *3 (S.D. Fla. Sept. 24, 2019). To prove conversion under Florida law, Wattum must establish

possession or an immediate right to possession of the converted property at the time of the conversion. *Id*. at 3. Further, money can be the subject of a conversion claim under Florida law if a claimant can demonstrate: "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *United States v. Bailey*, 419 F.3d 1208, 1264 (11th Cir. 2005). The Southern District of Florida has used the *Bailey* analysis to recognize that cryptocurrency can be the subject of a conversion claim as well. *See, e.g., Kleiman v. Wright*, No. 18-cv-80176, 2018 WL 6812914 (S.D. Fla. Dec. 27, 2018).

Here, Wattum has identified specific and identifiable Crypto Assets in Primary Defendants' possession. *See* Wattum Decl. at ¶¶ 21-38. Moreover, Wattum has an immediate right to possess the cryptocurrency based upon Primary Defendants' wrongful act of never delivering the Mining Equipment or making it available as required under the Purchase Agreement. Further, Wattum has made numerous demands for Primary Defendants to return the cryptocurrency, all of which have been ignored by Primary Defendants. *Id.* at ¶ 40. Wattum has established its right to recovery for its conversion cause of action. Wattum is entitled to recover compensatory damages and punitive damages given that conversion is an intentional tort. Wattum seeks punitive damages on the conversion claim in the amount of three (3) times compensatory damages (similar to the civil theft statute). Wattum does not seek a double recovery. The precise amount of damages is discussed below.

**5. <u>Tortious Interference with Existing Contracts (Count VI)</u>**

Primary Defendants are also liable for tortiously interfering with Wattum's contract with FAMCO. Florida law generally requires a plaintiff claiming tortious interference with an existing contractual relationship to prove four things:

(1) The existence of a business relationship or an enforceable contract;

(2) Knowledge of the relationship on the part of the defendant;

(3) An intentional and unjustified interference with the relationship by defendant

(4) Damage to the plaintiff as a result of the breach of the relationship

*TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1301 (S.D. Fla. 2012). "[A]n ongoing relationship with a current customer or a potential relationship with a future customer may be protected." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017).

Here, Wattum satisfies all four elements. Wattum had a business relationship with FAMCO. *See* Wattum Decl. at ¶¶ 45-48. Indeed, Wattum had agreed to resell the Mining Equipment to FAMCO for $999,363.00. *See* Compl. at ¶ 1; Wattum Decl. at ¶ 48. This relationship was not merely speculative, as FAMCO sued Wattum to enforce its rights under the contract. Wattum Decl. at ¶ 76. Primary Defendants knew about Wattum's relationship with FAMCO because Igor Kovalyshkin referenced Wattum's customer when purchasing the miners. *See* Compl. at ¶¶ 115-121; Wattum Decl. at ¶ 46. Nevertheless, Primary Defendants intentionally and unjustifiably interfered with this relationship by absconding with the Crypto Assets without providing the Mining Equipment. Wattum Decl. at ¶¶ 7-10. Primary Defendants' conduct has damaged Wattum in the form of (1) lost profits on the FAMCO deal including loss of prospective hosting and management services with FAMCO (*See* Section B.iii.3); and (2) attorneys' fees and costs in defending the FAMCO case (*See* Section B.iii.5(b)). Wattum has established the requisite elements of a tortious interference claim and should be granted judgment with respect to this cause of action by virtue of Defendants' default.

**6. <u>Tortious Interference with Advantageous Business Relationships (Count VII)</u>**

Likewise, Wattum has demonstrated its right to recover for Primary Defendants' tortious interference with Wattum's advantageous business relationships. Similar to the tortious interference with contractual relations claim, Wattum's tortious interference with advantageous business relationships claim requires Wattum to show:

> (1) The existence of a business relationship, not necessarily evidenced by an enforceable contract;
>
> (2) Knowledge of the relationship on the part of the defendant;
>
> (3) An intentional and unjustified interference with the relationship by the defendant; and
>
> (4) Damage to the plaintiff as a result of the breach of the relationship

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). For the reasons set forth *supra* Legal Argument § B.ii.5, Wattum has satisfied its evidentiary proffer for this cause of action and should be granted a judgment in its favor accordingly.

**7. <u>Primary Defendants' Liability is Joint and Several</u>**

Primary Defendants' liability to Wattum for the aforementioned causes of action is joint and several under Florida law for several reasons. First, employers (such as Chengdu) are liable for the tortious acts of their agents and/or employees (Jay and Carl) taken in furtherance of the employer's interest. *See Grippa v. Rubin*, 133 F.4th 1186, 1200 (11th Cir. 2025) (citing *Fields v. Devereux Found., Inc.*, 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018)). This liability is joint and several under Florida law. *See, e.g., Keyes Co. v. Sens*, 382 So.2d 1273, 1276 (Fla. 3d DCA 1980) (finding employer liable under a theory of respondeat superior and stating "[i]t is the established rule that when defendants are jointly liable the verdict for the damages should run against all"). Furthermore, joint and several liability can be predicated upon evidence of agency (actual and/or

ostensible). *See Whyte v. Alston Management, Inc.*, 2012 WL 11789773, *1 (S.D. Fla. Apr. 11, 2012). The corporate veil offers no protection under these circumstances and, regardless, the entity itself is non-existent. *Johnson v. New Destiny Christian Center Church, Inc.*, No. 6:15-cv-1698-Orl-37GJK, 2016 WL 11187162, *2 (S.D. Fla. Aug. 16, 2016) ("where a corporation is formed or utilized for an improper purpose, such as perpetuating a fraud or misleading creditors, the corporate form is a sham and will be ignored."). Additionally, joint and several liability is proper where, as here, there is evidence that Defendants acted in concert. *See Whyte*, 2012 WL 11789773, *1.

Here, Jay was the head of Chengdu and the brother of Chengdu's official owner. Wattum Decl. at ¶ 92. Carl was an outside sales agent and/or broker. *Id.* Carl told Wattum that he knew Chengdu, Jay and Jay's brother (the supposed owner of Chengdu) very well. *Id.* Both Jay and Carl urged Wattum to transfer funds as quickly as possible even before the order paperwork was generated citing economic pressure and product availability. *Id.* Neither one ever disclosed to Wattum that, at the time, Chengdu had been dissolved. *Id.* Carl and Jay held themselves out as Chengdu's agents, employees and representatives acting within the course and scope of such agency. *Id.* Furthermore, Jay and Carl made statements and performed acts that appeared to be within the regular business operations of Chengdu's business and in a manner consistent with their roles as representatives of Chengdu. *Id.* Consequently, Primary Defendants' liability to Wattum is joint and several.

***iii. The Pleadings and Supporting Declarations Set Forth a Sufficient Basis to Award Damages That Are Certain and Can Be Computed.***

After entry of a clerk's default, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who

has been defaulted for not appearing and who is neither a minor nor an incompetent person." *See* Fed. R. Civ. P. 55(b)(1).

**1. Value of the Misappropriated of Crypto Assets ($644,800.00)**

Initially, Wattum is entitled to recover compensatory damages in the amount $644,800 which represents the difference between the $904,800.00 paid to Primary Defendants and the $260,000.00 returned to Wattum by Primary Defendants. Wattum Decl. at ¶ 82. The payment was made in USDC, a cryptocurrency stablecoin whose value is pegged to the U.S. Dollar. Thus, for purposes of damages, the value of the Crypto Assets and the recoverable damages are expressed in U.S. Dollars. The amount sought is a sum certain that can be determined upon the admissions in the pleading and is otherwise supported by the Wattum Declaration. *See id.* at ¶¶ 7, 16, and 82. Therefore, this Court should enter judgment against Defendant Chengdu in the amount of $644,800.00.

**2. Prejudgment Interest ($119,579.73)**

Wattum is also entitled to prejudgment interest from the date of Defendants' breach of contract. Florida law provides for prejudgment interest in breach of contract cases calculated from the date of breach. *U.S. ex rel. Wesco Distribution, Inc. v. Am. Bridge Co.*, 473 F. Supp. 2d 1227 (S.D. Fla. 2007). Wattum is entitled to prejudgment interest in the amount of $119,579.73 calculated as follows:

| Date | Daily Interest Rate | Principal | Daily Interest amount | Days of Interest | Total |
|---|---|---|---|---|---|
| 7/1/2023 | 0.000210685 | 644,800 | $ 135.85 | 92.00 | $ 12,498.17 |
| 10/1/2023 | 0.000233973 | 644,800 | $ 150.87 | 92 | $ 13,879.65 |
| 1/1/2024 | 0.000248361 | 644,800 | $ 160.14 | 91 | $ 14,573.03 |
| 4/1/2024 | 0.000255191 | 644,800 | $ 164.55 | 91 | $ 14,973.79 |
| 7/1/2024 | 0.00025847 | 644,800 | $ 166.66 | 92 | $ 15,332.85 |
| 10/1/2024 | 0.000259563 | 644,800 | $ 167.37 | 92 | $ 15,397.69 |
| 1/1/2025 | 0.000256986 | 644,800 | $ 165.70 | 90 | $ 14,913.41 |
| 4/1/2025 | 0.000250685 | 644,800 | $ 161.64 | 91 | $ 14,709.39 |
| 7/1/2025 | 0.000243836 | 644,800 | $ 157.23 | 21 | $ 3,301.73 |
| | | | | | |
| | | | | **Total Interest** | **$ 119,579.73** |

As demonstrated above, the amount of prejudgment interest was calculated by multiplying the daily interest rate by the amount paid by Wattum to Primary Defendants (less the $260,000 returned to Wattum) to obtain the daily interest amount. That amount was then multiplied by the number of days of interest during the pertinent period. Interest continues to accrue on amount by the per diem interest rate of .000243836 or $157.23 as of July 1, 2025.

**3. Wattum's Lost Profits on its Deal with FAMCO including Hosting and Management Services ($3,117,351)**

(a) *Lost Profits Based on Placed FAMCO Order ($94,563)*

Wattum is entitled to recover its lost profits arising from Defendant's breach and interference. *Bizrocket.com, Inc. v. Interland, Inc.*, No. 04-60706-CIV, 2005 WL 8168265, *4 (S.D. Fla. May 23, 2005) (plaintiff may seek lost profits in breach of contract action under Florida law); *MAK, LLC v. Vuozzo*, No. 17-cv-23310, 2019 WL 13525586, *10 (S.D. Fla. Jan. 14, 2019) (Under Florida law, "[i]f a business is completely destroyed [due to tortious interference], the proper total measure of damages is the market value of the business on the date of the loss .... If the business is not completely destroyed, then it may recover lost profits." (quoting *Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 193 (Fla. 2d DCA 2004)). "'[L]ost profits must be established with a reasonable degree of certainty and must be a natural consequence of the wrong,' and '[s]uch an award cannot be based upon speculation or conjecture.'" *River Bridge Corp. v. Am. Somax Ventures ex rel. Am. Home Dev. Corp.*, 18 So.3d 648, 650 (Fla. 4th DCA 2009) (quoting *Sostchin v. Doll Enters., Inc.*, 847 So.2d 1123, 1128 (Fla. 3d DCA 2003)). However, "[d]ifficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than merely nominal) damages were suffered as a result of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount." *Whitby v. Infinity Radio Inc.*, 951 So.2d 890, 898 (Fla. 4th DCA 2007).

Here, Primary Defendants' tortious interference and breach of contract directly undermined Wattum's ability to perform under its contract with FAMCO. As set forth in the Wattum Declaration, Wattum had a contract in place to resell the miners purchased from Primary Defendants to FAMCO for $999,363.00, which would have resulted in $94,563.00 of profit,[3] the loss of which was caused directly by Primary Defendants' tortious interference. Wattum Decl. at ¶¶ 48-49.

(b) *Lost Profits on Future FAMCO Orders ($3,022,788)*

Furthermore, Wattum is entitled to recover for prospective orders that were lost. In addition to helping customers source mining equipment, Wattum offered a broad range of services including hosting, mining fleet management and data center buildout support. Direct evidence exists that the Order for 650 units giving rise to this case was part of a larger order for 1,000 units. *Id.* at ¶ 52. Furthermore, FAMCO expressed an interest in purchasing "at least 5,000 miners" in 2023. *Id.* at ¶ 60. Third, FAMCO expressed an interest in an "exclusive hosting deal" with Wattum. *Id.* at ¶ 59. Fourth, FAMCO expressed an interest in having Wattum "oversee the build" of FAMCO's other data centers and/or facilities. *Id.* at ¶ 61.

Wattum is entitled to recover:

- $50,918 (350 units X $145.48 profit per unit) in lost profits related to the remaining 350 units (out of the larger order of 1,000) that FAMCO cancelled due to the non-fulfillment of the first order of 650 which gives rise to this action (*id.* at ¶ 84(ii));
- $581,920 (4,000 units X $145.48 profit per unit) in lost profits related to the purchase and sale of an additional 4,000 miners (for a total of 5,000) that

[3] Wattum's profit per unit would have been $145.48 ($94,563 divided by 650 units).

FAMCO would likely have purchased but for Defendant's conduct (*id.* at 84(iii);

- $274,950 in lost profits related to the loss of hosting and management services relative to the 650 units (*id.* at ¶ 85); and
- $2,115,000 in lost profits related to the loss of hosting and management services relative to the 5,000 miners that FAMCO would likely have purchased and for which FAMCO required hosting and management services. *Id.* at ¶ 86.

**4. <u>Treble and/or Punitive Damages ($3,868,800)</u>**

*(a) Treble Damages ($1,934,400)*

Wattum is entitled to treble damages on its claim for civil theft (Count V) pursuant to Fla. Stat. § 772.11. *See* Fla. Stat. § 772.11. In fact, treble damages are mandatory under the statute, and the trial court has no discretion not to award the damages. *Aagaard-Juergensen, Inc. v. Lettelier*, 579 So.2d 404, 405 (Fla. 5th DCA 1991) ("The applicable case law clearly holds . . . that the award of treble damages under the Florida civil theft statute is mandatory."). The amount of Wattum's trebled damages should be $1,934,400.00 ($644,800.00 X 3). *See* Wattum Decl. at ¶ 83.

*(b) Punitive Damages ($1,934,400)*

In addition to and/or as an alternative to the treble damages available under Fla. Stat. § 772.11, Wattum respectfully submits that punitive damages equal to three (3) times compensatory damages are appropriate on its claims for fraud, conversion cause of action and tortious interference. Under Florida law, punitive damages may be awarded for a conversion cause of action "where the circumstances surrounding the conversion are such as to show fraud, actual malice, deliberate violence or oppression, or such gross negligence as to indicate a wanton

disregard of the rights of others." *Doral Country Club, Inc. v. Lindgren Plumbing Co.*, 175 So.2d 570, 571 (Fla. 3d DCA 1965). Punitive damages are also available to Wattum based on its claim of fraud under Florida law. *Cruise v. Graham*, 622 So.2d 37, 41 (Fla. 4th DCA 1993) ("[T]he rule now seems clear in Florida that a claim of fraud sufficient to justify compensatory damages is also sufficient to support an award of punitive damages.").

Primary Defendants' actual malice here is evident because *inter alia* through the following examples of Primary Defendants' conduct: (1) trading through an entity not in good standing or potentially dissolved prior to the transaction; (2) providing an invoice with an address that differed from Chengdu's registered address in the PRC registry; (3) accepting Wattum's funds and then absconding and shutting off all communications; and (4) responding "hehe" when served with the Complaint. Given Primary Defendants' actual malice and fraud, Wattum respectfully requests that it be awarded punitive damages in the amount of three (3) times its actual damages. *See, e.g. Energy Source, In. v. Gleeko Properties, LLC*, 2012 WL 13008451 at *6 (S.D. Fla. Dec. 12, 2012) (awarding treble damages as punitive damages for conversion and fraud causes of action amongst other causes of action).

To be sure, Wattum does not seek a double recovery in this case. Treble damages under the civil theft statute and punitive damages serve a similar purpose. Thus, if the Court awards treble damages under the civil theft statute, that award should not be duplicated with respect to any punitive damages award on Wattum's intentional tort claims. However, an award of punitive damages is not dependent upon the civil theft claim. Wattum laid out compensatory damages recoverable under its tort theories, including tortious interference. In addition to compensatory damages under these tort theories, Wattum also respectfully requests that this Court award punitive damages as well to punish defendants from their outrageous conduct. Thus, this Court can award

treble damages on the civil theft claim and punitive damages on the tort claims without overlap or duplication. Furthermore, under Florida law, punitive damages of up to three times compensatory damages have been held to be reasonable. *See* Fla. Stat. § 768.73(1)(a)(1) (stating an award of punitive damages may not exceed "Three times the amount of compensatory damages awarded to each claimant entitled thereto, consistent with the remaining provisions of this section . . ."); *Energy Source, Inc.*, 2012 WL 13008451 at *6 (S.D. Fla. Dec. 12, 2012) (awarding punitive damages in the amount of three times compensatory damages).

**5. Attorney's Fees and Costs ($154,746.52)**

*(a) Attorney's Fees and Costs for Prosecution of this Matter ($110,540.52)*

Wattum is entitled to an award of its attorney's fees and costs incurred in this action. Indeed, Fla. Stat. § 772.11 allows for a person proving civil theft to recover "reasonable attorney's fees and court costs." Here, Wattum established a right to recovery under its civil theft cause of action and, therefore, is entitled to recover its reasonable attorney's fees and costs. The Declaration of Ely Goldin ("Goldin Decl."), a copy of which is attached as **Exhibit B**, establishes that Wattum has incurred costs in the amount of $13,870.47 and attorney's fees in the amount of $96,670.05 in this matter and that the fees are reasonable and appropriate under the circumstances. *See* Goldin Decl. at ¶¶ 13, 14, 15, and 26; Wattum Decl. at ¶¶ 87-89.[4]

[4] This includes the $18,000 in fees incurred in drafting the instant Motion.

*(b) Attorney's Fees and Costs for Defending FAMCO Lawsuit ("Tort of Another") ($44,206)*

Wattum is also entitled to its attorneys' fees and costs expended in defending the FAMCO matter. In this regard, Florida law recognizes the "wrongful act doctrine." *City of Tallahassee v. Blankenship & Lee*, 736 So.2d 29, 30 (Fla. 1st DCA 1999). "The wrongful act doctrine applies when 'the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interests, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages.'" *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015) (quoting *Schwartz v. Bloch*, 88 So.3d 1068, 1071 (Fla. 4th DCA 2012)); *see also* Restatement (Second) of Torts § 914. Indeed, the Restatement (Second) of Torts § 914(2) states "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

This is precisely the case here. Primary Defendants, with knowledge of Wattum's contractual and/or business relationship with FAMCO, engaged in wrongful acts which directly caused Wattum to incur the fees and costs associated with defending the FAMCO matter. Wattum Decl. at ¶¶ 46, 76-78. Primary Defendants' conduct in this regard fits squarely within the wrongful act doctrine.

The Goldin Declaration establishes that Wattum incurred costs in the amount of $400.00 and attorney's fees in the amount of $43,806.00 in the FAMCO matter. *See* Goldin Decl. at ¶¶

16-17. As set forth below, these amounts are reasonable given the nature of both cases and Wattum's Counsel's experience, skillset, and expertise.

*(c) Reasonableness of Fees*

"It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In determining a reasonable fee, the Court must first determine the reasonable hourly rate. A reasonable hourly rate is one which is "in line with the prevailing market rate in the relevant legal community for similar services performed by lawyers of reasonably comparable skills, experience[,] and reputation." *Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, 842 F. Supp. 2d 1340, 1342 (S.D. Fla. 2012) (internal citations omitted). Generally, the "prevailing market rate" is determined by the location where the case is filed and the subject matter of the litigation. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1302 (S.D. Fla. 2015) ("[T]his Court 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.' Several well-established factors may be considered in arriving at that prevailing market rate[.]"). To determine the prevailing market rate, courts often consider "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

"Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A court, however, 'is itself an expert on the question [of a

reasonable hourly rate for attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting Norman, 836 F.2d at 1303). The Court may also consider any one of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to determine a reasonable hourly rate.[5]

Here, the Goldin Declaration sets forth the reasonableness of the fees charged to Wattum in light of the handling attorneys' credentials and experience. This Court has previously found hourly rates up to $850.00 to be reasonable. *See, e.g. CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.,* 22-MC-20762, 2022 WL 17718802, *4–5 (S.D. Fla. Nov. 30, 2022) (holding that fees of $850 for a partner and $700 for an associate are reasonable). In fact, as this Court recently noted in approving rates for senior attorneys of $1,058 per hour, $995 per hour, and $932 per hour, "the South Florida legal market has changed drastically in the last several years. Miami in particular has developed into a national legal market. That top-end firms will be able to charge national hourly rates in South Florida, now, is an inevitable consequence of that development." *U.S. Sugar Corp. v. Commerce & Indus. Ins. Co.*, 22-21737, 2023 WL 4953191, *5, 7 (S.D. Fla. Aug. 3, 2023).

The rates charged by Fox Rothschild are reasonable based upon the following application of the *Johnson* factors:

---

[5] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

(1) A significant amount of time and labor was required in light of the complex issues in this litigation, Primary Defendants' fraudulent transfers of the Crypto Assets, Primary Defendants' location and use of an incorrect address in connection with the transaction, seeking alternative methods of service, and attempting to obtain a Default Judgment.

(2) The Fox Rothschild attorneys charged their customary fees normally charged for similar matters.

(3) The questions presented were novel and included unique legal issues.

(4) To properly perform the legal services provided, including those detailed in bullet point number 1 above and those set forth in the Goldin Declaration, required significant advanced skills.

(5) Based upon the time dedicated to the handling of this action, the Fox Rothschild attorneys were precluded from working on other matters for which they could have charged their reasonable hourly rate.

(6) The customary fee for similar litigation matters is typically the same or significantly more than the amount Wattum seeks to recover herein.

(7) The fee is fixed and not contingent, and Wattum is obligated to pay the fee regardless of the outcome of the action.

(8) The time limitations that were imposed by the client and the circumstances were typical of other similar litigation matters.

(9) The amount involved in this action is significant, and the results obtained were optimal, as a Default has now been entered against Primary Defendants, and, if this Motion is granted, the Court will be entering a Default Judgment in favor of Wattum.

(10) Attorneys Braunstein, Goldin and Meehan are the attorneys who primarily worked on this matter for Wattum. Attorneys Goldin and Meehan also worked on the FAMCO Matter with Attorney Adam Lamb. All of the attorneys that worked on these matters have a wealth of experience, a high level of ability, and a good reputation. Their respective practices are concentrated on commercial litigation. Attorneys Braunstein, Goldin, Lamb and Meehan have represented clients in numerous actions, including appeals, in State and Federal Courts. *See* Goldin Decl. at ¶¶ 6-7, and 11.

(11) This case would not be considered "undesirable."

(12) Fox Rothschild LLP and its attorneys have a significant relationship with Wattum.

*See Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). Based upon the foregoing, and as set forth in the Goldin declaration, Wattum respectfully submits that it should be entitled to recover $122,476.05 in reasonable attorneys' fees and $14,270.47 in costs incurred in prosecuting this action and defending the FAMCO action.

Accordingly, Wattum requests that the Court enter the Order submitted herewith granting a default judgment in its favor.

**CONCLUSION**

Therefore, Wattum respectfully requests that the Court enter an Order granting its Motion for Default Judgment against Primary Defendants.

Dated: July 29, 2025

Respectfully submitted,

**FOX ROTHSCHILD LLP**

s/ *Alex L. Braunstein*

Alex L. Braunstein, Esq.
Florida Bar No. 98289
777 S. Flagler Dr., Suite 1700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600

Facsimile: (561) 835-9602
Tel: (561) 804-4497
abraunstein@foxrothschild.com

Ely Goldin, Esq. (*Admitted Pro Hac Vice*)
D. Wesley Meehan, Esq. (*Admitted Pro Hac Vice*)
980 Jolly Road, Suite 110
Blue Bell, PA 19422
Telephone: (610) 397-6500
Facsimile: (610) 397-0450
egoldin@forxrothschild.com
wmeehan@foxrothschild.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2025, the foregoing document was electronically filed and served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Alex L. Braunstein*
ALEX L. BRAUNSTEIN, ESQ.