**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-21052-DPG**

WATTUM MANAGEMENT, INC.,

Plaintiff,

v.,

CHENGDU CHENXIYU TECHNOLOGY CO. LTD. *et al*.,

Defendants,
_________________________________/

**PLAINTIFF'S REPLY TO ANSWER BY NOMINAL DEFENDANT AND GARNISHEE AUX CAYES FINTECH CO. LTD. TO WRIT OF GARNISHMENT AND REQUEST FOR EVIDENTIARY HEARING AND ORDER OF EXECUTION PURSUANT TO FLA. STAT. §77.13 AGAINST GARNISHEE**

Plaintiff Wattum Management Inc. ("Plaintiff" or "Wattum") by and through its undersigned counsel, Fox Rothschild LLP, respectfully submits this reply to Garnishee Aux Cayes Fintech Co. Ltd.'s OKX a/k/a OKEx ("Garnishee" or "OKX") answer to the Writ of Garnishment entered in the above-captioned matter on September 10, 2025 (ECF No. 48) (the "Writ") pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and Section 77.061 of the Florida Statutes[1]. As set forth more fully below, Plaintiff respectfully requests a hearing on Garnishee's two defenses, a determination in favor of Plaintiff on Garnishee's defenses followed by an order of execution.

**GARNISHEE'S ANSWER AND OBJECTIONS**

In its answer, Garnishee identifies two accounts registered to Judgment Debtors Deng Jie ("Jie Account") and Bao Shicun ("Shicun Account") with assets totaling approximately $180,617

1. This reply is timely submitted pursuant to an extension agreed to by counsel for Garnishee.

and $929, respectively. Additionally, Garnishee discloses other accounts registered to an unidentified non-party which "may have … property of [judgment debtor Deng Jie] in [its] possession or control." According to Garnishee, the non-party accounts hold approximately $1,594,918 in cryptocurrency assets.[2]

Garnishee claims that all of these accounts are frozen, but $164,999 in the Jie Account and the entire amount in the Non-Defendant Account are subject to an injunction order (the "Order") issued in the matter *Minting Dome Holding LLC v. Deng Jie, et al.*, Case Reference HCA 1202/2023, pending in the High Court of the Hong Kong Special Administrative Region. According to Garnishee, the Order prohibits Garnishee from disposing of or otherwise transferring the Judgment Debtor's property held in the identified accounts until further order by the Hong Kong court. In other words, per the Garnishee, all but $929 are unavailable.

In addition to its answer, Garnishee lodges two undeveloped objections. First, it asserts that the Court lacks personal jurisdiction over it. Second, Garnishee asserts that the Writ does not comply with Florida law. Respectfully, both assertions are incorrect.

**GARNISHEE WAIVED SERVICE, APPEARED AND TOOK ON THE MERITS**

As a threshold matter, the Court has personal jurisdiction over this Garnishee who was a party in this action since inception. Pursuant to Federal Rule of Civil Procedure 69, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Under Florida law, "in a garnishment proceeding, jurisdiction over the defendant garnishee is obtained by service on him,

[2] Garnishee claims that the approximate USD equivalent balances in the Jie, and Shicun, and Non-Defendant Accounts (based on the cryptocurrency assets held) are subject to change, including based on (1) normal market fluctuation of the cryptocurrency assets; and (2) open trading positions or product subscriptions that may affect overall cryptocurrency asset balances, unless and until such positions/subscriptions are closed by the accountholder or otherwise

actual or constructive, or by his appearance." *See Space Coast Credit Union v. The First, F.A.*, 467 So. 2d 737, 739 (Fla. 5th DCA 1985). The court acquires jurisdiction over the garnishee to the extent of the property garnished, as the extent of the garnishee's liability is the amount that it owes to the judgment debtor. *See Sec. Bank, N.A. v. BellSouth Advert. & Publ'g Corp.,* 679 So. 2d 795, 800 (Fla. 3d DCA 1996), *approved by BellSouth Advert. & Publ'g. Corp. v. Sec. Bank, N.A.,* 698 So. 2d 254 (Fla. 1997).

Here, Garnishee was named as a nominal defendant OKX a/k/a OKEx in Plaintiff's verified complaint. (ECF No. 1). On May 14, 2024, Garnishee – through its former counsel at Venable LLP - waived service of summons. (ECF No. 6). Among other things, Garnishee agreed to waive service and executed and an appropriate form of waiver in exchange for Plaintiff agreeing to remove from its motion for alternative service (which sought relief against another nominal defendant as well) any argument "that OKX is subject to service in the US or UK.") *See* Declaration of Ely Goldin, Esq. ("Goldin Decl.") at ¶¶ 8-10. The rationale for removing these arguments was Garnishee's concerns about their implication on other legal proceedings, as discussed *supra*, where further suggestion of Garnishee's activity in the United States would have had potentially unfavorable ramifications. *Id.* at ¶¶ 11-13.

Subsequently, on September 9, 2024, Plaintiff and Garnishee jointly stipulated to designate Garnishee as a nominal party. (ECF No. 15). Specifically, the stipulation acknowledges that Garnishee (1) took action to freeze one or more virtual wallets utilized by Defendants; (2) presently maintains "possession, custody and control over the virtual wallets in which the funds that Defendants are located"; and (3) "requires a valid order of court" to release those funds to Plaintiff. *Id*. at pg. 2. The Stipulation crystallized the parties' agreement and understanding that pre-litigation and upon reports of fraud, Garnishee *voluntarily* froze the Primary Defendants'



182601186.4

assets, and that said assets would remain frozen *pendente lite*. (ECF No. 15). *See also,* Goldin Decl. at ¶¶ 16-20.

As set forth in the Goldin Decl., while this action proceeded toward final judgment, Wattum worked cooperatively with Garnishee's former counsel at Venable LLP on several occasions matters including notice to the Primary Defendants through the OKX platform. *Id.* at ¶ 21. On July 17, 2025, as the case moved closer to conclusion, the Court approved the parties' Stipulation and designated Garnishee as a nominal party. (ECF No. 31). Shortly thereafter, on July 30, 2025, the Court entered default judgment as to Defendants Chengdu, Deng Jie, and Bao Shicun, jointly and severally in the amount of $5,975,592.15. (ECF No. 42). Thus, jurisdiction over Garnishee (who had been a nominal defendant in possession of Defendant's property from the very start) has been obtained in the amount of $5,975,592.15, well in excess of the value of Judgment Debtors' property Garnishee admits is in its possession.

To the extent Garnishee challenges jurisdiction on the basis it is not incorporated or headquartered in Florida, and the accounts purportedly at issue were created by individuals residing outside of Florida, such challenges are of no moment. Regardless of where Garnishee is based, it has already waived service by a Florida federal court and thus subjected itself to jurisdiction in Florida. *See Parra v. Raskin,* 647 So.2d 1010, 1011 (Fla. 3d DCA 1994) ("[W]hen a defendant waives an objection to insufficient service of process by failing to timely object, the defendant thereby consents to litigate the action and the court may not, either on the defendant's motion or its own initiative, dismiss the suit for insufficient service of process.").

Where and by whom the accounts containing Judgment Debtors' property were purportedly opened is also of no moment because those accounts received assets from the Southern District of Florida; indeed, the very same assets Plaintiff alleges were wrongfully taken from it. Specifically, in its Complaint, Plaintiff alleges that between June 16 and June 22, 2023, it

paid or transferred from its location in Aventura, Florida, $588,120 in cryptocurrency assets into Defendants' digital wallet accounts held by Garnishee as payment for cryptocurrency mining equipment that was never delivered. (ECF No. 1 ¶¶ 29-39). After filing reports with law enforcement, Plaintiff notified Garnishee of Defendants' fraud, and Garnishee took steps to freeze Defendants' assets in its possession on July 7, 2023. *Id*. at ¶ 58. OKS represented that it would release these assets to Plaintiff once a valid Court order was entered. *Id*. at ¶ 62. Thus, Garnishee cannot deny jurisdiction or renege on its promise to return assets wrongfully taken from the Southern District of Florida based on the same.

Moreover, beyond this litigation, Garnishee's connections to the United States are well documented. Garnishee was the subject of a high-profile criminal information filed in the Southern District of New York on February 24, 2025, that specifically alleged Garnishee did not properly register to do business in the United States despite engaging in significant transactions with persons in the United States like Plaintiff. *See, United States of America v. Aux Cayes Fintech Co., Ltd. d/b/a OKEx d/b/a OKX*, Docket No. 25-CR-69 (KPF) (S.D.N.Y) at ECF No. 1. For example, the information alleges that at least in or about 2018 through in or about at least early 2024, in the Southern District of New York and elsewhere, Garnishee knowingly conducted, controlled, managed, supervised, directed, and owned all or part of an unlicensed money transmitting business, which affected interstate and foreign commerce. *Id*. at ¶¶ 12-21. The same day the information was filed, Garnishee pled guilty to violating federal anti-money laundering laws and agreed to pay some very substantial penalties. *Id.* at EFF No. 3. To be sure, none of this is intended to prejudice Garnishee. Rather, this pending proceeding was likely *the* reason why Garnishee agreed to accept service, subject itself to this Court's jurisdiction and requested that Plaintiff tone down assertions in the draft motion for alternative service related to

OKX's U.S.-facing activities. Garnishee is not a stranger to the United States, let alone the Southern District of Florida, and its objection to jurisdiction fails.

**NO COMITY SHOULD BE AFFORDED TO A FOREIGN INJUNCTION**

The only other obstacle to collection under the Writ of Garnishment is the Order of the Hong Kong High Court that Garnishee claims prevents it from transferring Judgment Debtors' cryptocurrency assets held in the identified accounts[3]. Garnishee requests that this Court extend comity to the foreign Order, but doing so would be against well-established Florida law. Specifically, Florida courts have recognized:

> It is well settled that, as a general rule, only the final judgments of courts of a foreign country are subject to recognition and enforcement in this country, provided certain jurisdictional and due process standards are observed by the foreign court; **non-final or interlocutory orders of foreign courts, however, are generally not entitled to such recognition or enforcement.**

*de Pacanins v. Pacanins*, 650 So. 2d 1028, 1029–30 (Fla. 3d DCA 1995) (citing *Cardenas v. Solis*, 570 So. 2d 996, 998–99 (Fla. 3d DCA 1990)) (emphasis in original); *see, e.g.*, *Ogden v. Ogden,* 159 Fla. 604, 609, 33 So. 2d 870, 874 (Fla. 1947) ("We do not understand the rule of international comity to require the courts of this country to recognize and give effect to the judgments of an English Court that are not final."); *see also Restatement (Second) Conflict of Laws* § 98 cmt. c (1971); Bishop & Burnette, *United States Practice Concerning the Recognition of Foreign Judgments,* 16 Int'l Law. 425, 430–31 (1982); Westin, *Transnational Recognition and Enforcement of Civil Judgments,* 53 Notre Dame L. Rev. 734, 747 (1978); Note, *Recognition and Enforcement of Foreign Judgments in Florida and the Status of Florida Judgments Abroad,* 31 U. Fla. L. Rev. 588, 620 (1979).

3 Garnishee also objects to the Writ "to the extent that it does not comply with Florida law," but does not explain how the Writ does not comply. This is an insufficient objection and likewise fails to prevent enforcement of the Writ.

"The underlying reasons behind this salutary general rule is that it would be an undue burden for American courts to become entangled in the otherwise unfamiliar intricacies of foreign court practice by recognizing or enforcing the temporary court orders of another country, orders which are subject to being vacated, withdrawn, or superseded." *Cardenas*, 570 So. 2d at 998. Consequently, American courts generally avoid recognizing or enforcing such interlocutory orders and wait until the foreign litigation has resulted in a final order before even considering whether to give effect to that final order. *Id*. The one narrow exception is in the context of foreign family law matters. *See id*. (noting that American courts are more likely to recognize and enforce modifiable foreign judgments involving family and matrimonial matters "even though foreign interlocutory decrees are still generally not recognized or enforced").

The Order of the Hong Kong High Court is a non-final or interlocutory injunction order. Accordingly, it is not entitled to comity, recognition, or enforcement by this Court. It would be an undue burden for this Court to become entangled in proceedings of the Hong Kong High Court, and this Court should avoid recognizing the proceedings there until they are final. The Hong Kong action is also not a family law matter and therefore not subject to the narrow exception to the general rule against recognizing foreign injunctions. Thus, the Court should deny Garnishee's request for comity and order Garnishee to transfer the Judgment Debtors' cryptocurrency assets in its possession to Plaintiff.

Moreover, the Judgment Debtors' property in Garnishee's possession was frozen *before* the Order was entered by the Hong Kong High Court. Based on Plaintiff's reports and its own internal investigation, Garnishee ***voluntarily*** froze cryptocurrency assets fraudulently obtained from Plaintiff by Judgment Debtors ***prior to*** this litigation and ***prior to*** the filing of any lawsuit by anyone in Hong Kong. In an email dated July 7, 2023, Blake Cohen, on behalf of Garnishee, represented to and assured Plaintiff that: (a) Garnishee froze amounts in excess of those specified

by Plaintiff; (b) significant portions of the amounts sent by Plaintiff were traced "to another OKX account" which was then sent "to a 3rd OKX account"; and (c) this third account "was frozen with most of the funds." *See* ECF 1 at ¶ 58. Thereafter, Plaintiff excused Garnishee from answering its Complaint and agreed to the stipulation designating Garnishee as a nominal defendant in reliance on the promise Garnishee would transfer the Judgment Debtors' property to Plaintiff once it received a valid Court order.

On August 1, 2023, the Order was entered by the Hong Kong High Court. However, Plaintiff was not informed about the Order or that any action was pending in Hong Kong until December 2, 2025, when new counsel for Garnishee sent a copy of the Order to counsel for Plaintiff. *See,* Goldin Decl. at ¶¶ 13, 16, 19 and 25. Still, at that time, counsel for Garnishee intimated that at least $180,000 of Judgment Debtor's frozen property was unaffected by the Order. *Id.* at ¶ 29. It was not until Garnishee filed its answer to the Writ on February 3, 2025, that Garnishee took the position that all of Judgment Debtors' property in its possession is subject to the Order. Garnishee does not provide any explanation for this about-face. Notably, both the copies of the injunction provided to Plaintiff's counsel and attached to Garnishee's answer are redacted, making it difficult to evaluate the merits of Garnishee's position. Thus, Garnishee has not clearly established that even if the Order were entitled to comity, which it is not, the same would prohibit it from transferring Judgment Debtors' property it has identified herein to Plaintiff.

**<u>WATTUM IS NOT REQUIRED TO INTERVENE IN HONG KONG</u>**

In footnote 2 of its Answer, Garnishee suggests that Wattum should intervene in the Hong Kong action. Wattum disagrees. Wattum brought this action to recover its own property misappropriated by the Primary Defendants and frozen by Garnishee as far back as July 7, 2023. Importantly, Wattum has its own obligation to customers relative to this property. *See, First*

*Argentine Mining Co. v. Wattum Management, Inc.* No. 1:24-CV-21044-DPG (S.D.Fla.). Since 2024, Wattum proceeded with this case on the reasonable belief that Garnishee was ready to turn over the frozen funds upon receipt of a valid order of a U.S. federal court. Wattum dutifully and at substantial expense pursued and obtained that order. At no point prior to the entry of the final Judgment did OKX ever mention a Hong Kong injunction or suggest that its ability to comply with a U.S. court order was hampered by a foreign order or decree.

Legally speaking, Wattum is not required to intervene abroad. At best, the foreign injunction is a preliminary restraint on debtors' property interests Garnishee's possession. However, the effect of Wattum's judgment is to *extinguish* any property interest that debtors had and transfer that interest to Wattum as a judgment creditor. Thus, strictly speaking, as a matter of Florida law, debtors no longer own the frozen funds – Wattum does.

Equitably speaking, it would be manifestly unfair to require, after all these years, that Wattum be required to start brand new legal proceedings abroad. While noting a present right to realize upon the frozen funds, Wattum suggested that Garnishee consider interpleading the funds into the registry of this court. *See*¸ Goldin Decl. at ¶ 29. To save Garnishee the expense, Wattum even offered to prepare a draft of an interpleader motion[4]. *Id.* If Garnishee is uncertain, it may certain avail itself of U.S. interpleader protection which comes with certain protections from liability. If anything, Garnishee should pay the funds into the registry of this Court, not the other way around.

**<u>REQUEST FOR HEARING</u>**

Where, as here, a plaintiff contests a garnishee's answer to a writ of garnishment and there unknown facts like the indemnity of relevant account holder, a hearing is necessary to

[4] According to public sources, Garnishee is "one of the largest cryptocurrency trading platforms" in the world with "daily spot trading volume of approximately $5.5 billion and daily derivatives trading volume of approximately $40 billion."



182601186.4

resolve the dispute between the parties. *See Navy Fed. Credit Union v. Nicholas Fin., Inc.*, 411 So. 3d 494, 495 (Fla. 5th DCA 2025) (citing Fla. Stat. § 77.083). Based on the foregoing, Plaintiff respectfully requests the Court deny Garnishee's request for comity of the foreign Order and for fees and costs pursuant to Fla. Stat. § 77.28, and instead grant Plaintiff's motion for an evidentiary hearing and order of execution against Garnishee for the full amount of Judgment Debtors' property in Garnishee's possession pursuant to Fla. Stat. § 77.13, filed with this reply.

Dated: March 6, 2026

Respectfully submitted,

**FOX ROTHSCHILD LLP**

s/ *Alex L. Braunstein*
Alex L. Braunstein, Esq.
Florida Bar No. 98289
777 S. Flagler Dr., Suite 1700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602
Tel: (561) 804-4497
abraunstein@foxrothschild.com

and

s/ *Ely Goldin*
Ely Goldin, Esq. (*Admitted Pro Hac Vice*)
D. Wesley Meehan, Esq.
(*Admitted Pro Hac Vice*)
980 Jolly Road, Suite 110
Blue Bell, PA 19422
Telephone: (610) 397-6500
Facsimile: (610) 397-0450
egoldin@foxrothschild.com
wmeehan@foxrothschild.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 6, 2026, the foregoing document was electronically filed and served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Alex L. Braunstein*
ALEX L. BRAUNSTEIN, ESQ.