**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-21052**

WATTUM MANAGEMENT, INC.,

Plaintiff,

v.,

CHENGDU CHENXIYU TECHNOLOGY CO. LTD. *et al*.,

Defendants,
_______________________________________/

**DECLARATION OF ELY GOLDIN, ESQ.**

I, Ely Goldin, hereby declare as follows:

1. I am counsel in the above-styled action, representing Plaintiff Wattum Management, Inc. ("Wattum"). I was admitted *Pro Hac Vice* to serve in this capacity by Court Order dated June 3, 2024. D.E. 10. I submit this declaration in support of Wattum's Motion for Final Default Judgment.

2. I am over 18 years of age and I have personal knowledge of all facts and circumstances set forth herein as an attorney of record for Fox Rothschild LLP ("Fox Rothschild").

3. I am personally familiar with, and had a direct participatory role in, the work that Fox Rothschild has performed on behalf of Wattum with respect to this lawsuit.

4. I make this declaration in support of Wattum's reply to Garnishee's Answer in this matter and in support of Wattum's request for an evidentiary hearing and order of execution on assets of the judgment debtors held by the Garnishee.

5. On March 18, 2024, Wattum filed its Complaint in this action.

6. As stated in the Complaint, prior to the filing of this Action, on the basis of Wattum's reports and its own internal investigation, Garnishee ***voluntarily froze*** certain funds on or about July 7, 2023.

7. In an email dated July 7, 2023, Blake Cohen of Garnishee represented to and assured Plaintiff that: (a) Garnishee froze amounts in excess of those specified by Plaintiff; (b) significant portions of the amounts sent by Plaintiff were traced "to another OKX account" which was then sent "to a 3rd OKX account;" and (c) this third account "was frozen with most of the funds." *See* ECF No. 1 at ¶ 58.

8. On May 13, 2024, Plaintiff was contacted by Steven E. Swaney, Esq., a partner at Venable LLP, stating that his "firm has been retained by OKX in connection with the above-captioned lawsuit." *See,* **Exhibit "1".**

9. At the time, Garnishee had not been formally served, and Plaintiff had prepared a motion for alternative service. The draft motion methodically set forth Garnishee's connections with the United States and made a case for why Garnishee, which is based abroad and headquartered in the Seychelles, an offshore haven, was subject to alternative service through its many U.S.-facing contacts.

10. On May 14, 2024, counsel for Plaintiff and counsel for Garnishee had a professional, productive, and constructive telephone conversation. As a result of that conversation, Garnishee agreed to waive service and execute an appropriate form of waiver. In exchange, Plaintiff agreed to remove from its motion for alternative service (which sought relief against another nominal defendant as well) any argument "that OKX is subject to service in the US or UK." *See,* **Exhibit "2"**.

11. The rationale for removing mention or argument "that OKX is subject to service in the US or UK" is Garnishee's other unrelated U.S.-facing legal proceedings where any suggestion of Garnishee's activity in the U.S. could have potentially unfavorable ramifications.

12. During these conversations, Plaintiff explained that (a) the Primary Defendants appeared to have absconded; (b) Garnishee was named as a nominal defendant because it possessed and had voluntarily frozen funds as explained in the July 7, 2023 email; (c) Plaintiff intended to secure a judgment against the Primary Defendants; and (d) upon final judgment, Plaintiff would seek a turnover of the frozen funds. Garnishee assured Plaintiff that it would respect the Court's authority in this action and abide by any order, including a final judgment.

13. At no point during the May 14, 2024, conversation was Plaintiff informed of any pending lawsuit in Hong Kong.

14. Plaintiff and Garnishee reached agreement and a waiver of service was filed on May 14, 2024. *See,* ECF No. 5.

15. On September 9, 2024, Plaintiff and Garnishee filed a Stipulation Regarding Garnishee's Nominal Party Status (the "OKX Stipulation"). *See,* ECF No. 15.

16. In the preamble to the Garnishee Stipulation, the Parties agree that counsel for Plaintiff and Garnishee spoke on May 14, 2024, June 7, 2024, and August 8, 2024. *See* ECF No. 15 at p. 2. At no point during any of these three conversations was Plaintiff informed of any pending lawsuit in Hong Kong.

17. In the preamble to the OKX Stipulation, the Parties noted that (i) Garnishee "presently maintains possession, custody and control over the virtual wallets in which funds that Primary Defendants converted are located;" and (ii) Garnishee "requires a valid order of court to release those funds to Plaintiff." *See*, ECF No. 15 at p. 2 (internal quotation marks omitted).

18. Furthermore, in the preamble to the Garnishee Stipulation, the Parties further noted that Plaintiff "seeks reasonable assurance that assets related to the alleged fraudulent Sale are not released by Garnishee without reasonable notice such that Plaintiff has sufficient time to seek relief, if any, from the Court."

19. At no point prior to the filing of the Stipulation was Plaintiff ever informed of any pending lawsuit in Hong Kong.

20. In the Garnishee Stipulation, Plaintiff excused Garnishee's appearance or the need to file an Answer in exchange for Garnishee's cooperation and agreement not to release funds absent reasonable notice. Furthermore, Garnishee's counsel agreed to accept service of any Rule 45 subpoena. The Stipulation included boilerplate and prototypical reservations of rights related to objections, including upon jurisdiction, primarily for the benefit of Garnishee's other pending U.S. proceedings.

21. I continued to communicate with OKX's counsel in February 2025, March 2025 and May 2025 regarding this case including notifications to the Primary Defendants through the OKX platform. *See,* **Exhibit "3"**.

22. On July 30, 2025, a Final Default Judgment was entered in favor of Plaintiff and against the Primary Defendants in the total amount of $5,975,592.15 including reasonable counsel fees and costs. [ECF No. 42].

23. On September 10, 2025, the Court entered a Writ of Garnishment as to Garnishee. (ECF No. 48) (the "Writ").

24. On September 18, 2025, counsel for Plaintiff personally informed counsel for Garnishee that a final judgment had been entered and enclosed the Writ. Counsel for Plaintiff also asked: "Can you kindly confirm that OKX will honor this in lieu of more formal service as

discussed?" That day, counsel for Garnishee responded: "Acknowledged receipt. Will revert shortly." *See,* **Exhibit "4"**.

25. On September 30, 2025, counsel for Plaintiff sent the following email to counsel for Garnishee: "I hope all is well. I have a client call later today. Are you in a position to provide any informal feedback on the below? Perhaps a call?" *See,* **Exhibit "5"**.

26. At no point prior to September 30, 2025, was Plaintiff ever informed of any pending lawsuit in Hong Kong.

27. On October 30, 2025, Plaintiff's counsel received a telephone call from Garnishee's new counsel at GrayRobinson, P.A.

28. On December 2, 2025, Garnishee's new counsel provided Plaintiff's counsel with a copy of injunctions in a Hong Kong proceeding initiated by Minting Dome Holding LLC.

29. Based on discussions in or around that time, Plaintiff's counsel was of the understanding that at least $180,000 of the frozen funds were *unaffected* by any injunction.

30. On January 17, 2026, Plaintiff's counsel sent an email to Garnishee's counsel at GrayRobinson, P.A., as follows:

> I wanted to pick up where we left off before the winter holidays.
>
> With respect to the $180,000 or so (I know the value fluctuates) we'd like to make arrangements for a turnover. Normally, the process for that is an answer to the writ of garnishment and then a formal final order of garnishment – or something along those lines.
>
> With respect to the other assets of the judgment debtor that are restrained pursuant to the HK preliminary injunction, after taking a look at the law our views on this are as follows: An injunction temporarily restrains property of the defendant pending a final outcome. It is a forecast of how a case may turnout, not a determination of rights. A final judgment, by contrast, is a determination of rights. Our client has a final judgment against the

> judgment debtor and we feel that our client is entitled to realize by the judgment debtor's property, even if that property is restrained. Furthermore, under US (FL) law, a final order of garnishment dispossesses the judgment debtor of any property interest and transforms it into property of the judgment creditor, such that there is nothing left to restrain. Finally, to the extent that OKX, after its own evaluation, feels that it's somewhere between a rock and a hard place, it seems to me that interpleader is an appropriate approach. I know who Minting Done is. They are a US company. No one can fault OKX for interpleading the funds into a US court a US creditor (Wattum) has a judgment and a US party (Minting Dome) has a restraint. The interpleader process comes with court-ordered legal protection and a discharge of liability/responsibility.
>
> I would like to invite you to make your own assessment however, in the interest of time, I am going to start drafting a motion for final order of garnishment as to the $180K (plus or minus) and the other funds. Our goal is to minimize any inconvenience and expense to OKX, and in this regard, I would be happy to prepare a simple interpleader motion and order of liability discharge for your evaluation which you can use or not use depending on your own judgment.

*See,* **Exhibit "6"**.

31. On January 28, 2026 counsel for Plaintiff and Garnishee spoke and Garnishee indicated that it would shortly file its formal response to the Writ of Garnishment.

32. On February 3, 2026, Garnishee filed its answer to the Writ of Garnishment. *See generally,* ECF No. 50.

33. By exchange of emails and telephone calls, the parties agreed to extend Plaintiff's deadline to any response to ECF No. 50 through Friday, March 6, 2026.

34. For the avoidance of doubt, while this declaration sets forth my course of interaction with former and current counsel for Garnishee, nothing herein should be construed as a criticism of Garnishee's counsel. At all times, my interactions with Garnishee's counsel have been professional, courteous and polite. The fact that Wattum disagrees with certain positions taken by Garnishee has no bearing on the professionalism of Garnishee's counsel or their law firms.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 6, 2026



Ely Goldin, Esq.